Harry RIDDLE, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (ALLEGHENY CITY ELECTRIC, INC.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 9, 2007.

Decided Jan. 8, 2008.

Edward Jaffee Abes and Sandra W. Kokal, Pittsburgh, for petitioner.

Regis J. Moeller, Pittsburgh, for respondent.

BEFORE: COLINS, Judge *,
PELLEGRINI, Judge, and
McCLOSKEY, Senior Judge.

OPINION BY Judge COLINS.

We consider Harry Riddle's (Riddle) petition for review of the decision of the Workers' Compensation Appeal Board (Board) that affirmed the decision of Workers' Compensation Judge Cheryl Ignasiak (WCJ), granting a Petition to Modify Compensation Benefits (Modification Petition) filed by Allegheny City Electric, Inc. (Employer), and dismissing Employer's Suspension Petition. We affirm the Board.

In August, 2000, during the course of his employment as an electrician, Riddle sustained a work-related injury originally recognized on a Notice of Temporary Compensation Payable as right shoulder rotator cuff tendonitis. The description of injury was subsequently amended by the WCJ to include subacromial impingement, subacromial bursitis, a rotator cuff tear, and extensive bicep tearing of the right shoulder. Riddle's average weekly wage was $720.86, with a compensation rate of $480.00.

█ Employer filed its Modification Petition and Suspension Petition in March, 2005, alleging that work was available within Riddle's residual work skills, education, experience, and geographic area.[1] Employer presented the testimony of Glenn A. Buterbaugh, M.D., a board-certified orthopedic surgeon, who treated Riddle; Dr. Buterbaugh opined that given Riddle's restriction from performing prolonged overhead work, he could not perform his pre-injury work as an electrician. Employer presented evidence regarding a labor market survey conducted by James DeMartino (DeMartino), a vocational rehabilitation specialist and certified disability manager. In support of his position, Riddle submitted the testimony of Celia Evans (Evans), a vocational counselor and evaluator. The WCJ found the opinions of DeMartino to be more credible and persuasive than those of Evans, and she determined that Riddle could perform light-

---

* The decision in this case was reached prior to the date that Judge Colins assumed the status of senior judge.

1. Under Section 306(b)(2) of the Pennsylvania Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.1; 2501–2626(Act), an employer may request a modification of benefits based upon earning power. 77 P.S. § 512(2). To establish earning power, an employer may (1) offer to a claimant a specific job that is available; or (2) establish earning power through expert opinion evidence of a labor market survey. *South Hills Health System v. Workers' Compensation Appeal Board (Kiefer)*, 806 A.2d 962 (Pa.Cmwlth.2002). Under a labor market survey, the employer must prove that jobs exist within the claimant's residual capabilities. *Allied Products and Services v. Workers' Compensation Appeal Board (Click)*, 823 A.2d 284 (Pa.Cmwlth.2003). The employer must provide evidence of jobs that are actually available. *Click*. Whether a claimant is capable of performing a particular position is a finding of fact for the WCJ. *H.M. Stauffer & Sons, Inc. v. Workers' Compensation Appeal Board (Davis)*, 687 A.2d 869 (Pa.Cmwlth. 1996).

Section 306(b)(2) of the Act states that a claimant is considered partially disabled "if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply." 77 P.S. § 512(2).

duty work for forty hours per week and that work was generally available to Riddle with earnings of $301.45 per week; Riddle's benefits were modified to partial benefits of $279.62 per week. (Decision of the WCJ, Findings of Fact Nos. 8(a) and 8(b); Conclusions of Law Nos. 1–2.)

The Board rejected Riddle's claim on appeal that the testimony of DeMartino was not competent to establish earning capacity because DeMartino did not adequately account for Riddle's age in identifying positions, and was mistaken as to Riddle's supervisory experience and other abilities.[2] The Board also rejected Riddle's argument that Employer failed to meet its burden under Section 306(b)(2) of the Act to prove job availability in the correct geographic area.

In this appeal,[3] Riddle again argues that the Board erred in affirming the decision of the WCJ, because the jobs located were not available in his labor market. Riddle avers that because he does not *reside* in Pennsylvania, under Section 306(b)(2) of the Act, an earning power assessment was required to have been performed in the "usual employment area where the injury occurred"—i.e., Pittsburgh, Pennsylvania. In her Findings of Fact, the WCJ summarized the testimony of DeMartino as to the Earning Power Assessment report he prepared:

d) He prepared an Earning Power Assessment report, *based upon the Claimant's geographical area and the relevant labor market. The Earning Power Assessment reviewed jobs that were available to the Claimant within the geographical area of Wheeling, West Virginia. He reviewed several different sources including America's Job Bank, Pennsylvania Career Link Internet websites and local newspapers.* He also contacted employers to inquire regarding whether the employer were hiring. He further testified that he came across current openings of jobs that were open and available and were suitable for Claimant. Based upon the Claimant's education and employment history, he noted that Claimant would be suitable for a variety of occupations; e) He located a position at Radio Shack, open and available, that paid between $5.15 and $10.00 per hour, 40 hours per week. The job at Radio Shack was a sales representative position. Mr. DeMartino also identified a customer service representative position at Block Buster, which paid $5.75 per hour, 32 hours per week. In both instances, he personally contacted the employer to as-

2. DeMartino's Initial Vocational Assessment Report was prepared in March, 2004; the report indicates that Riddle is a fifty-seven year old man who resides in Wheeling, West Virginia, and has held a current West Virginia Electrician's License since 1993. The report further indicates that Riddle was working in Pittsburgh, Pennsylvania at the time of the injury, and possesses a valid Ohio driver's license, as he stays with his father who lives in Ohio. Riddle has held various jobs as an electrician. Riddle's job description with Employer included the installation and repair of electrical systems, apparatus, and electrical and electronic components of industrial machinery and equipment. For a previous employer, National Lighting, Riddle worked as an electrician in post offices all over the United States. Riddle is a high school graduate, and has attended some community college business and accounting classes. He was a U.S. Air Force sergeant from 1966–1969, stationed in Thailand and Texas, and he received specialty training in the military as an electrician. (Initial Vocational Assessment Report, Employer's Exhibit C.)

3. In workers' compensation cases, our review is limited to determining whether necessary findings of fact are supported by substantial evidence and whether constitutional rights have been violated or errors of law have been committed. 2 Pa.C.S. § 704.

certain the specific job duties. The Radio Shack position was characterized as light duty work. Mr. DeMartino, thereafter, performed a site visit and met with the manager, Jason Roznick. He confirmed that this job was open and available effective February 3, 2005.

. . .

(i) Mr. DeMartino conducted an additional earning power assessment utilizing the same methods as done previously. Mr. DeMartino described additional light duty positions, such as pharmacy technician paying $5.15 per hour, 40 hours per week, a position at Falcon Plastics as laborer providing a salary of $7.50 per hour, 40 hours per week, as well as a position at Kennedy Hardware, a position at National City, a position at Home Depot, as well as a position at Cingular Wireless. All of these positions were available, and within the Claimant's vocational capabilities.

(Decision of the WCJ, Findings of Fact Nos. 4(d), 4(e) and 4(i), italics added.) During his testimony before the WCJ, DeMartino noted that, at the conclusion of a February, 2004 meeting between himself, Riddle, and Riddle's counsel, Riddle's counsel had requested that the job search occur in Wheeling, West Virginia, where Riddle has a residence. DeMartino testified:

My notes where you are referring to that say that you would like copies of the reports also says, "Attorney Abes would like job search to be conducted in Wheeling." The injury took place in a different—I guess the injury took place in the Pennsylvania area, although it is just across the border, and I agreed that yes, job search will take place near the claimant's current residence and where the injury took place."

(Notes of Testimony, September 14, 2005, p. 138.) In response to a question from Riddle's counsel as to whether DeMartino could be told by the opposing side where to do the job search, DeMartino replied:

No, you can't. I guess you requested it, but, of course, as I mentioned, I would have to do what is required by law, which is what I ended up doing. *I ended up conducting it in the [w]heeling area and where the injury took place. Id.* (italics added.)

Riddle testified at length as to his job search, including applications he made in person at a number of locations in the Wheeling, West Virginia area. At a December, 2005 deposition, he responded to questions from Employer's representative as to the vicinity or areas in which he is willing to work:

A. I would like to find a job in this area.

Q. What area is that?

A. Pittsburgh–Wheeling.

Q. So you wouldn't have a problem working in Pittsburgh?

A. No.

Q. Nor in Wheeling, West Virginia?

A. Oh, no.

Q. And what about in Washington, PA?

A. Washington, PA would be great.

(Notes of Testimony, December 5, 2005, pp. 69–70.)

We note initially that our review of the record reveals that DeMartino's listing of current openings contains no job openings in Pittsburgh, PA, where Riddle was working when the injury occurred; two job openings in Washington, PA; five job openings in the Wheeling, West Virginia area; and several openings in nearby Ohio. (Earnings Power Assessment Report, p. 5.) However, as noted by the Board, the 1996 amendments to the Act were designed in part to reduce workers' compensation costs and restore efficiency to the compensation system, and we must assume that the legislature did not intend a result

which is absurd or unreasonable (Opinion of the Board, p. 12, citing *Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.)*, 575 Pa. 66, 834 A.2d 524 (2003)). The Board opined that under pre-amendment case law, an employer was required to prove job availability in the area of the claimant's residence, even if the claimant resided out of state, before an employer could satisfy its burden under *Kachinski v. Workers' Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987) to modify benefits. The Board concluded that no court decision interprets the Act so as to preclude an employer from performing a labor market survey in the area of the claimant's residence. We agree with the Board that *sub judice*, where Riddle has a residence in Wheeling, and stays with his father in Ohio, where he holds a driver's license, Employer should not be precluded from attempting to establish job availability in the Wheeling, West Virginia area, as well as nearby areas of Ohio and Pennsylvania, rather than the location of the injury.

Riddle's second argument, that DeMartino failed to consider his age in evaluating the appropriate occupational area, and that therefore the earnings power assessment he prepared was legally insufficient, must also fail. There is ample evidence in the record to demonstrate that DeMartino considered Riddle's age as a factor, both in his Initial Vocational Assessment Report and the subsequent Earning Power Assessment. DeMartino's reports include information about Riddle's good health, ability to perform basic arithmetic operations quickly and accurately, home computer skills, and good general learning ability. DeMartino's February, 2005 report states, "Mr. Riddle's age, education, employment, history, transferable skills, physical capability and geographic location were taken into consideration." (Earnings Power Assessment Report, p. 5.)

Based upon the foregoing, we affirm the Board's decision and order.

## ORDER

AND NOW, this 8th day of January 2008, the order of the Workers' Compensation Appeal Board in this matter is AFFIRMED.