**Doug REBEOR, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ECKERD), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 13, 2009.

Decided July 9, 2009.

Frank A. Natale, II, New Castle, for petitioner.

Jonathan B. Sprague, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Doug Rebeor (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that af-firmed a WCJ's decision and order granting Eckerd's (Employer) Modification Petition because gainful employment was generally available to Claimant in his pre-injury labor market. On appeal, Claimant contends that the Board erred in granting the Modification Petition because Employer did not act in good faith by having the labor market survey conducted in Lawrence County, Pennsylvania. Claimant contends that he notified Employer of his intention to relocate to South Carolina, which he subsequently did, and that Employer should have conducted the labor market survey in South Carolina, where he currently resides.

Claimant was injured in the course and scope of his employment on August 28, 2002, when he was involved in a car accident in Lawrence County, Pennsylvania. Employer issued a Notice of Compensation Payable (NCP) for a "type of injury" described as "dislocated left hip L1/femoral" and a "description of injury" as "head fx mva." (NCP, September 26, 2002.) Claimant's weekly compensation rate was $331.00 based on an average weekly wage of $446.00. After undergoing surgery and physical therapy, Claimant returned to light-duty work for Employer in March 2003. In December 2005, Claimant stopped working for Employer because Employer eliminated Claimant's light-duty position. On July 14, 2006, Employer served Claimant with a "Notice of Ability to Return to Work," Bureau Form LIBC–757, informing Claimant that Employer's medical expert, Michael L. Seel, M.D., had released him to perform light-duty work. On December 11, 2006, Employer filed a Modification Petition alleging that work was generally available to Claimant. Claimant denied the allegations, and the matter was assigned to a WCJ for hearing and disposition.

In support of the Modification Petition, Employer presented the deposition testimony of Dr. Seel, who is a board certified orthopedic surgeon. Dr. Seel performed an independent medical evaluation (IME) of Claimant on March 16, 2006. Dr. Seel diagnosed Claimant with a left hip fracture and a dislocation, as well as a lumbar disc bulge at L4–L5. Dr. Seel felt that the diagnoses were related to the August 28, 2002 work injury. He opined that Claimant achieved maximum medical improvement and was capable of performing medium-duty work with lifting not to exceed fifty pounds and limitations on repetitive climbing of ladders. Dr. Seel reviewed a vocational report prepared by Kathleen Roche, which identified a number of positions that were available to Claimant within his labor market. Dr. Seel approved three of these positions, which included a cashier position at the Exxon Buy 'N' Fly (medium-duty), a hotel clerk at Amerihost/Best Western (light-duty), and a cashier and checker position at Country Fair/Citgo (light-duty). Dr. Seel opined that the three approved positions fit within Claimant's restrictions as determined by Claimant's treating physician.

Ms. Roche, who is approved by the Bureau to perform labor market surveys and earning power assessments for workers' compensation claims and litigation in Pennsylvania, also testified. On July 25, 2006, Ms. Roche met Claimant for a vocational interview. In connection with this interview, she also obtained Dr. Seel's work release and Claimant's restrictions. Ms. Roche also confirmed with Employer's Human Resource Manager that no positions within Claimant's restrictions were available with Employer. Ms. Roche performed a transferable skills analysis and a labor market survey, and she identified a number of positions that were available to Claimant within his labor market. Three of the positions were approved by Dr. Seel.

Accordingly, Ms. Roche concluded that modified-duty work was available to Claimant within his labor market for between $240.00 and $280.00 per week. Ms. Roche reached this conclusion based on Claimant's age, educational background, past work experience, physical limitations, and her transferable skills analysis. On cross-examination, Ms. Roche acknowledged her awareness that Claimant was planning on moving to South Carolina, but she did not contact any stores owned by Employer in South Carolina, nor did she know whether the claims adjuster contacted any stores in South Carolina to determine whether light-duty work was available.

Claimant also testified before the WCJ. Claimant moved to South Carolina in September 2006. Employer owns stores in South Carolina, but Claimant did not look for work at those stores. Claimant testified that he is restricted from lifting over 20 pounds and restricted from climbing ladders. He can stand for one or two hours before he needs to sit. Claimant has no driving restrictions. Since moving to South Carolina in September 2006, Claimant testified that he has not sought any medical treatment for the work injury. Claimant presented no vocational testimony to contradict the testimony of Ms. Roche, nor did he present medical testimony to contradict the testimony of Dr. Seel.

The WCJ concluded that, as of October 18, 2006, work was generally available to Claimant in his labor market and within his physical restrictions. In so concluding, the WCJ found the testimony of Dr. Seel and Ms. Roche credible, and the testimony of Claimant not credible. Specifically, the WCJ found that Ms. Roche performed a thorough vocational examination and that Dr. Seel performed a thorough IME approving three specific available work positions for Claimant. The WCJ noted Claimant's contention that work was not

available to him because the vocational search was done in Lawrence County[1], where Claimant previously resided, and not in South Carolina, where Claimant presently resides. The WCJ stated, however, that "[E]mployer is not required to find work generally available to the claimant in his current area of residence but is only required to establish that work was generally available to claimant in his preinjury economy. Therefore, this argument is rejected." (WCJ Decision, Findings of Fact ¶ 6(e).) As such, the WCJ granted Employer's Modification Petition.

Claimant appealed, and the Board affirmed the WCJ's decision and order. The Board held that Section 306(b)(2) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512(2), does not require that Employer prove that work was generally available in South Carolina, where Claimant currently resides. Rather, the Board held that Employer is only required to prove work availability in Claimant's "usual employment area," which is the area in which the employee lives within the Commonwealth or, alternatively, in the area where the work injury occurred. As such, the Board found no error in granting the Modification Petition because there was work generally available in Lawrence County, Pennsylvania.

On appeal, Claimant argues that Employer did not act reasonably and in good faith in utilizing a vocational rehabilitation evaluation based in Lawrence County, Pennsylvania, because Employer knew of Claimant's impending relocation to South Carolina. Claimant contends that "[b]ased on the Court's analysis in *Kachinski [v. Workmen's Compensation Appeal Board*

*(Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987)], as well as parts of [the Act, *as amended*], this Honorable Court should reasonably conclude that, although the jobs listed through the Vocational Rehabilitation Evaluation were jobs that admittedly 'existed in theory;' the jobs were not actually, reasonably *available* to [Claimant]." (Claimant's Br. at 7.)

In opposition, Employer argues that the labor market survey properly comprised a search of available positions in Lawrence County, Pennsylvania, pursuant to Section 306(b)(2) of the Act.

■■■ In *Diehl v. Workers' Compensation Appeal Board (IA Construction),* 972 A.2d 100 (Pa.Cmwlth.2009) (en banc), this Court recently explained the Act's requirements relevant to petitions to modify benefits filed by employers. Employers file modification petitions when they seek to change the benefit status of a claimant, or when employers seek to reduce the amount of benefits that a claimant receives. *Id.* at 103. "A claimant who is injured and not capable of working is initially entitled to total disability benefits, because disability under the Act is synonymous with a loss of earning power." *Id.* An employer who files a modification petition to change a claimant's benefits from total to partial may succeed if the employer establishes that the disabled claimant has "earning power." *Id.* This type of proceeding is governed by Section 306(b)(2) of the Act, which explains earning power, in relevant part, as:

(2) "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which in-

---

1. The WCJ notes that the search was done in Allegheny County, instead of Lawrence County. This was raised in the appeal to the Board, but the Board concluded that any reference to Allegheny County was a clerical error, and was harmless. Claimant does not raise this issue on appeal to this Court.

cludes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists *in the usual employment area in which the employe lives within this Commonwealth. If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply.* If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation.

77 P.S. § 512(2) (emphasis added). *Diehl* further explained:

> By showing the availability of suitable employment that the claimant is capable of performing, located through a labor market survey, an employer may reduce the amount of a claimant's benefits from total to partial disability. Alternatively, the employer may show that the claimant can work by referring the claimant to specific job openings. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987).[6] Once the claimant's earning power is established under either method, the claimant's total disability benefit amount will be reduced to a partial disability benefit.

6 To satisfy the *Kachinski* test, the employer must refer the claimant to actual jobs that are within the claimant's capabilities. However, with the post-*Kachinski* addition of Section 306(b)(2) to the Act in 1996, an employer may also use "expert opinion evidence," *i.e.*, a labor market survey, to establish job availability. 77 P.S. § 512(2). Since 1996, employers may use either the *Kachinski* test or the labor market survey to reduce the amount of a claimant's disability benefit from total to partial.

*Diehl,* 972 A.2d at 103, n. 6.

■ In this case, Employer used a labor market survey to establish job availability in order to reduce Claimant's disability benefits. The question is whether the labor market survey correctly considered jobs in Lawrence County, Pennsylvania, as opposed to jobs in South Carolina.

The "usual employment area" is defined by Section 306(b)(2) as the area "in which the employe lives within this Commonwealth [and i]f the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply." 77 P.S. § 512(2). At the time Claimant's injury occurred, and at the time the vocational interview and assessment occurred on July 25, 2006, Claimant was residing in the Commonwealth. Claimant was also a resident of the Commonwealth at the time Ms. Roche conducted the labor market survey. Claimant did not move to South Carolina until the end of September 2006. Even assuming that Claimant did not live in the Commonwealth at the time of the vocational assessment and labor market survey, the injury occurred in Western Pennsylvania, not South Carolina. As such, South Carolina is not Claimant's "usual employment area" pursuant to the Act.

Claimant's reliance on *South Hills Health System v. Workers' Compensation Appeal Board (Kiefer)*, 806 A.2d 962 (Pa. Cmwlth.2002), for the proposition that the

jobs identified in the labor market survey are not available to him, is misplaced. In *South Hills,* this Court held that when modification is "based on earning power by the use of a certified vocational expert, that expert must base a determination of earning power on positions that are actually available." *South Hills,* 806 A.2d at 970, 971. However, this Court clarified that the " 'existing' positions must be available *at the time* an expert conducts a job survey...." Id. (emphasis added). Here, the parties do not disagree that the three modified-duty jobs were available to Claimant at the time Ms. Roche conducted the labor market survey. As such, Claimant's argument fails.

In *Riddle v. Workers' Compensation Appeal Board (Allegheny City Electric, Inc.),* 940 A.2d 1251 (Pa.Cmwlth.2008), this Court recently addressed the language of Section 306(b)(2) and concluded that, in seeking modification of benefits for a claimant who resided outside of the Commonwealth, the employer could establish job availability via a labor market survey in nearby areas in which the claimant resides as opposed to areas where the injury occurred. There, the employer's modification petition was granted and, on appeal, the claimant argued that the Board erred because the jobs identified in the labor market survey were not available in *his* labor market. The claimant argued that because he did not reside in the Commonwealth, under Section 306(b)(2), the earning power assessment was required to have been performed where the injury occurred, in Pittsburgh, which was the "usual employment area." Instead, the employer identified jobs in Wheeling, West

Virginia, which was the geographical area in which the claimant had a residence and for which his attorney requested the labor market survey be conducted. This Court agreed with the Board that there is no case law "which interprets the Act so as to *preclude* an employer from performing a labor market survey in the area of the claimant's residence." *Id.* at 1255 (emphasis added). Thus, because "the 1996 amendments to the Act were designed in part to reduce workers' compensation costs and restore efficiency to the compensation system," and because the claimant had a residence in Wheeling, West Virginia, the employer was not precluded from attempting to establish job availability in that area, rather than in the location where the claimant's injury occurred. *Id.* at 1254–55.

This Court, in *Riddle,* determined that employers are not *prohibited* from conducting a labor market survey outside of the Commonwealth when a claimant no longer lives within the Commonwealth. *Riddle* did not hold, however, that employers are *required* under the Act to conduct a labor market survey outside of the Commonwealth when a claimant subsequently moves to another state. In this case, unlike in *Riddle,* Claimant did not reside outside of the Commonwealth at the time of the survey. Requiring Employer to conduct the labor market survey in South Carolina when Claimant did not live there at the time, and when the injury did not occur there, would not only run counter to the plain language of the statute, but it would also place an unreasonable burden on Employer. As such, this Court declines to grant Claimant the relief he seeks.[2]

---

**2.** Claimant also contends that he has always desired to remain employed and, thus, this is not a case of removal from the workforce as this Court addressed in *Blong v. Workers' Compensation Appeal Board (Fluid Contain-*

*ment),* 890 A.2d 1150 (Pa.Cmwlth.2006). We note that neither the Board nor the WCJ determined that Claimant removed himself from the workforce. Additionally, Employer does not contend that Claimant removed him-

Accordingly, we affirm the order of the Board.

Judge SMITH–RIBNER concurs in the result only.

### *ORDER*

**NOW,** July 9, 2009, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

self from the workforce. Because removal from the workforce was not a reason for granting the Modification Petition, and be-

cause of this Court's disposition, we need not address this argument.