981 A.2d 1288

**Harry RIDDLE, Appellant**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ALLEGHENY CITY ELECTRIC, INC.), Appellee.**

Supreme Court of Pennsylvania.

Argued March 4, 2009.

Decided Oct. 22, 2009.

Edward J. Abes, Esq., Abes Baumann, P.C., Pittsburgh, for Harry Riddle.

Lawrence R. Chaban, Esq., for amicus curia Pennsylvania Association for Justice.

Amber Marie Kenger, Esq., Richard C. Lengler, Esq., Workers Compensation Appeal Board, Harrisburg, for Workers' Compensation Appeal Board.

Regis J. Moeller, Esq., Poerio, Walter & Mason, Inc., Pittsburgh, for Allegheny City Electric, Inc.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## *OPINION*

Justice GREENSPAN.

Harry Riddle (Appellant) is a West Virginia resident formerly employed as an electrician by Allegheny City Electric (ACE) in Pittsburgh, Pennsylvania. In August 2000, Appellant sustained a work-related injury described as right shoulder tendonitis. ACE accepted the injury and began paying workers' compensation benefits in the amount of $480.60 per week. The benefits were calculated based on a stipulated weekly salary of $720.86 per week.

In April 2004, ACE notified Appellant that his benefits would be terminated because he had fully recovered as of March 31, 2004. Appellant challenged the notice of termination and sought to amend the description of his injury. On March 25, 2005, Workers' Compensation Judge Cheryl A. Ignasiak (WCJ Ignasiak) denied ACE's petition, finding that Appellant had not yet fully recovered from his August 2000 work injury. WCJ Ignasiak accepted the testimony of the treating physician who released Appellant to perform light-duty work. Appellant was permitted to amend the description of his injury to include subacromial impingement with bursitis, rotator cuff tear, and tear in the long head of the bicep tendon in the right shoulder area.

On March 9, 2005, given the treating physician's release, ACE filed a petition for modification or suspension of Appellant's workers' compensation benefits. ACE alleged that, considering his age, skills, education, experience, and work availability in the relevant geographical area, Appellant had a residual earning capacity requiring a decrease in benefits. In support of its petition, ACE presented the testimony of James DeMartino, a vocational expert. Appellant answered the petition by denying ACE's allegations. Appellant rebutted ACE's evidence with his own testimony and the report of his vocational expert, Celia P. Evans.

On behalf of ACE, Mr. DeMartino testified that after evaluating Appellant he performed a labor market survey for the Wheeling area in West Virginia and prepared a three-part

earning power assessment report (EPA). WCJ Memo. at
¶ 4(d). In this EPA, Mr. DeMartino identified several available positions, including sales representative, pharmacy technician, plastics laborer, and inventory clerk. Overall, five positions were in Wheeling, West Virginia, two were in Washington, Pennsylvania, and several others were in the nearby State of Ohio.[1] None of the positions identified by Mr. DeMartino were in Pittsburgh, Pennsylvania where Appellant was working at the time of his injury.

WCJ Ignasiak held six hearings from May 2005 to August 2006 and accepted expert reports and testimony.[2] During the February 2006 hearing, Appellant asked that ACE's petition be dismissed on the ground that in developing an EPA, ACE had not complied, *inter alia*, with the geographical area requirement of the Workers' Compensation Act Section 306(b)(2), 77 P.S. § 512(2).[3] In August 2006, WCJ Ignasiak

1. Appellant possesses an Ohio driver's license that lists his father's Ohio address as his own.

2. The testimony centered on whether the positions proposed by Mr. DeMartino were appropriate for Appellant given his skills, age, education, and work experience. WCJ Ignasiak credited Mr. DeMartino's testimony over that of Appellant and Ms. Evans, Appellant's expert. Although Appellant challenged the WCJ's credibility determinations before the Workers' Compensation Appeal Board (WCAB) and the Commonwealth Court, we did not grant allowance of appeal on that issue.

3. Section 306(b) of the Workers' Compensation Act is published at 77 P.S. § 512. In relevant part, Section 306(b) provides

 (1) For disability partial in character caused by the compensable injury ... sixty-six and two-thirds per centum of the difference between the wages of the injured employe ... and the earning power of the employe thereafter ...

 (2) "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. *If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply.* If the employer has a specific job vacancy the

denied Appellant's request. Further, the WCJ relied on Mr. DeMartino's EPA for Wheeling, West Virginia to grant ACE's modification petition and reduce Appellant's benefits to $279.62 per week effective September 2, 2005.[4] WCJ Memo. at ¶¶ 8(b), 4(d).

On appeal to the Workers' Compensation Appeal Board (WCAB), Appellant contested the WCJ's reliance on the EPA on several grounds, including whether Mr. DeMartino correctly developed the EPA by focusing on Wheeling, West Virginia, where Appellant lived, rather than on Pittsburgh, Pennsylvania, where he worked at the time of his injury. In November 2006, the WCAB affirmed the reduction of benefits.

Appellant appealed and raised the same issue in Commonwealth Court. The Commonwealth Court held that ACE was not precluded from obtaining a modification of benefits based on job availability in West Virginia, Ohio, or Pennsylvania because Appellant had a residence in West Virginia and stayed with his father in Ohio, where he also held a driver's license. *Riddle v. Workers' Comp. Appeal Bd.,* 940 A.2d 1251, 1255 (Pa.Commw.2008). According to the Commonwealth Court, ACE was not restricted to the Pittsburgh, Pennsylvania area in conducting the EPA. *Id.*

We granted Appellant's Petition for Allowance of Appeal on the following issue:

Under Section 306(b) of the Workers' Compensation Act, 77 P.S. § 512(2), may an employer meet its burden of proof to justify modification of an award of workers' compensation benefits to an injured non-resident employee, based on an [EPA] which focused on the location of the employee's

employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation. The vocational expert shall comply with the Code of Professional Ethics for Rehabilitation Counselors pertaining to the conduct of expert witnesses.

77 P.S. § 512(1)-(2) (emphasis added).

4. WCJ Ignasiak dismissed the suspension petition.

residence, as opposed to the location where the injury occurred?

Appellant argues that the Commonwealth Court erred in affirming the decision of the WCAB to modify his benefits. According to Appellant, under the plain language of Section 306(b), the EPA was not competent evidence to prove Appellant's earning power. Appellant states that the EPA should have focused on the Pittsburgh area only, where Appellant's injury occurred, rather than on the Wheeling area.

Under Pennsylvania law, an employee who is partially disabled because of a work-related injury may receive compensation equal to a percentage of the difference between his pre-injury wages and his earning power after the injury. 77 P.S. § 512(1).[5] Here, ACE sought to reduce Appellant's benefits by showing an increase in his earning power after the treating physician released Appellant to light-duty work. The statute describes the means by which ACE could satisfy its burden of proving earning power. According to the statute, earning power is a function of the work the employee is "capable of performing" and job availability "in the usual employment area." 77 P.S. § 512(2). ACE could carry its burden of proof by introducing expert testimony as to both elements. With respect to injured employees who do not live in Pennsylvania, "the usual employment area where the injury occurred shall apply." 77 P.S. § 512(2). Here, according to Appellant, the injury occurred in Pittsburgh, Pennsylvania so an appropriate EPA should have focused on Pittsburgh.

In response to Appellant's challenge to the Commonwealth Court's decision affirming the reduction of his benefits, ACE raises the following arguments. ACE claims that the statute merely requires that the area of injury—Pittsburgh—must be used as a starting point in developing an EPA for Appellant. According to ACE, the statute permitted its expert to develop an EPA for additional areas with which Appellant had economic and vocational ties, such as parts of West Virginia and Ohio, in order to discover his "true" earning power. In

5. The formula is: benefits = 66⅔ % × (pre-injury wage—earning power). 77 P.S. § 512(1).

making this claim, ACE argues that we should adopt its own interpretation of the statute rather than a strict reading of the language or else risk obtaining absurd results in certain instances. ACE proposes that we affirm the Commonwealth Court because the EPA it submitted demonstrates Appellant's "true" earning power as intended by the General Assembly in Section 306(b). We address these arguments in turn.

Section 306(b)(2) states that "the usual employment area where the injury occurred *shall* apply" when an employer develops an EPA for an out-of-state employee. 77 P.S. § 512(2) (emphasis added). ACE contends that although it was required under the statute to conduct an EPA for the Pittsburgh area, its evidence of Appellant's earning power could also include job availability in other areas, such as Wheeling, West Virginia, and parts of Ohio. In effect, ACE claims that the statute gives it leeway to choose which geographical areas to use for a "true" evaluation of Appellant's earning power as long as ACE also uses the area where the injury occurred.

 We reject ACE's broad interpretation of Section 306(b)(2). In its common usage as well as legal parlance, the phrase "shall" is mandatory. *Chanceford Aviation Prop. v. Chanceford Township Bd. of Supervisors*, 592 Pa. 100, 923 A.2d 1099, 1104–05 (2007); Black's Law Dictionary 1407 (8th ed.1999); *see* 1 Pa.C.S. § 1903(a) (statutory construction of words). The statute clearly and patently states that, for an out-of-state resident, the "usual employment area" for purposes of developing an EPA is defined as that area "where the injury occurred." 77 P.S. § 512(2). Additional language denoting exclusivity of this geographical limitation would have been superfluous as the legislature's policy choice is expressed unambiguously in the statute. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921. Indeed, we may not expand the definition of the "usual employment area" under the pretext of fulfilling the General Assembly's intent to determine Appellant's "true" earning power. 1 Pa.C.S. § 1921. For this reason, we reject ACE's claim that, in its effort to reduce the amount of benefits

it pays, it may introduce evidence not only of job availability in the area where the injury occurred but also in other areas that it believes are relevant.

Next, we consider ACE's contention that Section 306(b) has internal conflicts and unreasonable applications if read strictly. ACE claims that the statutory requirement to perform the EPA in the area "where the injury occurred" conflicts with this Court's interpretation of the statutory requirement to identify work in the EPA that Appellant is "capable of performing." 77 P.S. § 512(2). ACE's argument relies on case law pre-dating the current version of Section 306(b) which has no application to the current statute.

Before it was amended in 1996,[6] the Workers' Compensation Act did not delineate standards for employers seeking modification or suspension of benefits. *Kachinski v. Workers' Comp. Appeal Bd. (Vepco Const. Co.)*, 516 Pa. 240, 532 A.2d 374, 376 (1987). In *Kachinski*, this Court filled that gap by holding that an employer who sought modification or suspension of workers' compensation benefits had to "produce evidence of a referral ... to a then open job ... which fit[ ] in the occupational category for which the claimant [w]as ... given medical clearance." *Id.* at 380. If the referral did not result in employment then benefits would continue. *Id.* The Court held that modification of benefits was appropriate when an employer showed "that other work [was actually] available to the claimant which he [was] *capable of obtaining.*" *Id.* at 377 (emphasis added). In subsequent cases, the Commonwealth Court clarified the *Kachinski* standard, in relevant part, by holding that employers did not prove that an injured employee was "capable of obtaining" an existing job if that job required a lengthy commute. *See, e.g., Karpulk v. Workers' Comp. Appeal Bd. (Worth and Co.)*, 708 A.2d 513, 516–17 (Pa.Commw.1998), *appeal denied*, 557 Pa. 633, 732 A.2d 617 (1998). According to ACE, in some circumstances, it would be absurd to try and find positions that are both in the area where the injury occurred and within a reasonable commuting

6. Act of June 24, 1996, P.L. 57 (adding clause 2 to 77 P.S. § 512).

area.[7] As a result, ACE proposes that we should not read Section 306(b)(2) strictly and instead adopt its broader interpretation as better reflecting the intent of the General Assembly to reintegrate injured workers into the work force.

In making its argument, ACE misinterprets the purpose of the statute. When it amended Section 306(b) to add subsection (2) in 1996, the General Assembly replaced this Court's *Kachinski* approach. 77 P.S. § 512(2); *see Edwards v. Workers' Comp. Appeal Bd. (MPW Indus. Services, Inc.)*, 858 A.2d 648, 651 (Pa.Cmwlth.2004) (holding that the 1996 amendment eliminated the *Kachinski* requirement that an injured employee be offered an actual job).[8] The legislature amended the Workers' Compensation Act and added the definition of "earning power" at issue here as well as a new standard for proving earning power. The current Section 306(b) does not require that the employer provide the injured employee with a job or specify attributes, such as geographical location, for that job as this Court had previously done in *Kachinski*. 77 P.S.

7. ACE proposes the following scenarios: 1) a Cherry Hill, New Jersey, resident who works as a sales person in Philadelphia is injured in Erie, Pennsylvania; 2) a Milwaukee, Wisconsin, resident who is injured in Wilkes–Barre, Pennsylvania, while on temporary assignment for a Lancaster employer; and 3) a Delaware resident who works in Philadelphia and is injured on special mission to Indianapolis, Indiana. According to ACE, conducting an EPA only where the injuries took place in these situations would lead to absurd results because the injured employees would not be "capable of performing" the jobs located beyond reasonable commuting distances.

8. By adopting subsection (2), the legislature lowered the *Kachinski* burden of proof by allowing an employer to obtain modification or suspension of benefits on evidence of earning power proved through expert testimony rather than by providing evidence that the claimant had obtained employment. *Compare* 77 P.S. § 512(2) *and Kachinski*, 532 A.2d at 380. In this sense, the legislature replaced this Court's *Kachinski* approach. The *Kachinski* test continues to apply exclusively only in cases where the injury took place before June 24, 1996, like the case cited by the concurrence, *Lewis v. Workers' Comp. Appeal Bd.*, 919 A.2d 922 (2007). *See* § 32.1(a) of Act 1996, June 24, P.L. 350, No. 57 (quoted in the historical note to 77 P.S. § 512, providing that the addition of subsection (2) applies only to claims for injuries which were suffered on or after the effective date of the amendment, June 24, 1996). We do not hold here that an employer who meets the *Kachinski* test would not meet the Section 306(b) test. Indeed, under certain circumstances, the employer may be able to meet both tests.

§ 512; *see Edwards,* 858 A.2d at 651. Rather, the sole purpose of current Section 306(b) is to describe the payment schedule for partial disability and provide a formula for calculating an injured employee's benefits. 77 P.S. § 512. The statute defines how earning power is calculated for different categories of claimants, including out-of-state residents. 77 P.S. § 512(2).

The calculation under most circumstances only approximates a claimant's "true" earning power. For the majority of employees injured on the job, the Section 306(b) formula is a fairly accurate approximation because it reflects their job market and choices in pursuing employment before the injury. Indeed, the General Assembly weighed competing policies in this area of law and effectively made a policy choice. We must defer to the General Assembly's explicit dictate and cannot alter the clear expression of policy by the General Assembly under the guise of "pursuing its spirit." 1 Pa.C.S. § 1921.

The General Assembly defined the method for evaluating "earning power" in unequivocal mandatory language that identifies the area where the injury occurred as the relevant location for non-residents. 77 P.S. § 512(2). For this reason, we hold that when developing an EPA for such an employee, an employer must focus its job availability analysis on the area where the injury occurred, here Pittsburgh. *Id.* The employer has no discretion to enlarge its search and focus on multiple or other areas that it decides could yield a "true" assessment of an injured employee's earning power, even if these additional areas overlap with the area where the injury occurred. *See* ACE's Brief at 10.

Finally, turning to its evidence, ACE claims that its EPA included the Pittsburgh area where Appellant's injury occurred. This contention is not supported by WCJ Ignasiak's findings of fact or by the record. WCJ Ignasiak found that ACE submitted an EPA focusing on the Wheeling, West Virginia area. WCJ Memo. at ¶¶ 8(b), 4(d). The record supports that conclusion. Mr. DeMartino testified that he prepared an EPA for Wheeling and the surrounding areas

because "[t]hat is where Mr. Riddle resides." N.T., 9/14/05, at 145–46. ACE proposes that because the EPA for Wheeling included an incidental search for jobs in Pittsburgh, approximately 75 miles away, then the EPA is sufficient to justify modification of benefits under Section 306(b)(2). The contention fails, however, because it is neither borne out by the facts nor supported by the statute. Mr. DeMartino testified that he found five positions in Wheeling, West Virginia, two in Washington, Pennsylvania, and several others in the nearby State of Ohio. *See* EPA dated February 28, 2005, at 5. No jobs were found in Pittsburgh, Pennsylvania, and this fact undermines ACE's position. More importantly, the statute mandates a focus on Pittsburgh. 77 P.S. § 512(2). It is not sufficient for ACE to look at Pittsburgh merely as a satellite market of Wheeling when conducting the EPA.[9] 77 P.S. § 512(2). Also, ACE may not conduct its EPA in multiple areas, such as Wheeling and Pittsburgh here. Under Section 306(b)(2), ACE had no latitude in choosing which markets are relevant to an EPA for Appellant. ACE may not avoid this statutory prescription in order to reduce or eliminate its obligation to pay benefits. If an EPA focused on Pittsburgh reveals no jobs, then reduction of benefits is not authorized under Section 306(b)(2).

We hold that the EPA submitted by ACE was insufficient to justify a modification of benefits under Section 306(b). The decision of the Commonwealth Court is hereby reversed and ACE's Petition for Modification or Suspension is denied.

Chief Justice CASTILLE and Justice EAKIN and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion in which Justice BAER and Justice TODD join.

9. By this holding, we do not decide whether Pittsburgh is a satellite market within the "usual employment area" encompassed by an EPA for Wheeling, West Virginia. Answering that question is unnecessary given our conclusion that ACE improperly focused its EPA on an area other than Pittsburgh, Pennsylvania.

Justice SAYLOR, concurring.

I join the majority opinion, except for its indication that, with the 1996 amendments to Section 306(b) of the Workers' Compensation Act, 77 P.S. § 512, the General Assembly "replaced" this Court's approach under *Kachinski v. WCAB (Vepco Const. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). *See* Majority Opinion, at 1292. I find this assertion to be confusing, since this Court has continued to apply and refine *Kachinski*, most recently in *Lewis v. WCAB (Giles & Ransome, Inc.)*, 591 Pa. 490, 919 A.2d 922 (2007). Moreover, the Commonwealth Court has maintained that an employer may establish job availability, alternatively, through the use of a labor market survey as prescribed in Section 306(b) or via the *Kachinski* method entailing, *inter alia*, identification of an available job within the claimant's capabilities. *See, e.g., Rebeor v. WCAB (Eckerd)*, 976 A.2d 655, 659 (Pa.Cmwlth.2009). Thus, while the majority's characterization is consistent with the opening passage of Section 306(b)(2), 77 P.S. § 512(2) (providing that " '[e]arning power' shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area"), it suggests a substantial shift in actual practice as reflected in prevailing decisional law. Accordingly, I would leave the issue of whether the Section 306(b) amendments replaced *Kachinski* to a case in which the question is squarely before the Court.

Justice BAER and Justice TODD join this concurring opinion.