IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sekou Thiams,                          :
                    Petitioner         :
                                       :
          v.                           :  No. 1039 C.D. 2017
                                       :  SUBMITTED:  January 5, 2018
Workers' Compensation Appeal           :
Board (Canada Dry Delaware             :
Valley),                               :
                    Respondent         :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                          FILED:  February 6, 2018


        Sekou Thiams (Claimant) petitions this Court for review of a July 5, 2017

order of the Workers' Compensation Appeal Board (Board) which affirmed the

decision of a workers' compensation judge (WCJ), to grant Claimant's claim petition

for the period of January 2, 2015 through August 23, 2015 and suspend wage

benefits effective August 24, 2015.  We affirm.


## I. Background


        Claimant worked for Canada Dry Delaware Valley (Employer) as a sales

representative.  On November 19, 2014, Claimant sustained a work injury to his

lower back as he reached for a pallet of Snapple that started to fall. He sought

medical care the following day but continued to work until January 1, 2015. When

Claimant ceased working, he began to receive workers' compensation benefits.[1]

Claimant subsequently filed a claim petition for full-disability workers'

compensation benefits (wage loss and medical benefits) with the Pennsylvania

Department of Labor and Industry on May 29, 2015. In its response to the claim

petition, Employer did not dispute the occurrence of the injury, only its nature and

extent. Employer sought a modification of benefits based on the availability of

modified-duty work.

Claimant stopped receiving wage loss benefits from New Jersey in August

2015, but continued to receive medical benefits. On September 7, 2016, the WCJ

granted Claimant's claim petition as it related to past wage losses by limiting

Claimant's benefits for wage loss to the period of January 2, 2015 through August

23, 2015. The WCJ also awarded Claimant the difference between his rate of

compensation benefits received in New Jersey and the amount to which he was

---

[1] Employer accepted Claimant's injury as compensable under the New Jersey Workmen's Compensation Act because Claimant was hired in New Jersey. (Certified Record (C.R.), Item 4, Defendant's Answer to Claim Petition.) *See* 34 N.J. Stat. Ann. §§ 15-1 – 15-146. At the time Employer's Answer was filed, Claimant continued to receive temporary total disability benefits from New Jersey. (C.R., Defendant's Answer to Claim Petition.) Consequently, Employer asserted a credit for all benefits paid in the event Claimant was deemed entitled to benefits in Pennsylvania. *Id.*

entitled under the Pennsylvania Workers' Compensation Act (Act).[2]  However, the WCJ suspended Claimant's wage loss benefits after August 2015 because Employer offered Claimant a modified work-duty position/schedule that was approved by his treating physicians.  Claimant appealed to the Board, which took no additional evidence and affirmed the decision of the WCJ.  This appeal followed.[3]

## II. Discussion

The only issue before this Court is whether the Board erred in affirming the WCJ's suspension of Claimant's wage loss benefits.  Claimant argues the WCJ erred in suspending wage loss benefits because the position offered by Employer was a full-duty position that did not accommodate Claimant's medical restrictions.  In offering such a position, Claimant maintains, Employer failed to comply with the requirements set forth in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 532 A.2d 374 (Pa. 1987).

*Kachinski* established a procedure governing the return to work of injured employees.  532 A.2d at 379-380.  First, an employer seeking to modify a claimant's

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

[3] This Court's review of an order of the Board is limited to whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed.  *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164 (Pa. Cmwlth. 2003).

3

benefits on the basis he has recovered some or all of his ability must first produce medical evidence of a change in condition. *Id.* at 380. Next, the employer must produce evidence of a referral to a then-open job which fits within the occupational category for which the claimant has been given medical clearance. *Id.* Finally, the claimant must demonstrate that he has in good faith followed through with the referral.[4]

There is no dispute the first requirement of the *Kachinski* test has been met. Claimant's argument rests exclusively on Employer's alleged failure to comply with the second requirement. Claimant asserts that Employer did not produce evidence of a referral to a then-open job which fit within the occupational category for which Claimant was given medical clearance. Employer responds that substantial and competent evidence of record exists to support the WCJ's decision, which fully complied with the requirements of *Kachinski*.

In challenges to the findings of the WCJ, the Board or reviewing court must determine whether, considering the evidence as a whole, the WCJ's findings have the requisite measure of support in the record. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Where the Board has

---

[4] A fourth requirement, that an injured employee must be offered an actual job, was eliminated by a 1996 amendment to Section 306(b) of the Act. 77 P.S. §512(2); *see Riddle v. Workers' Comp. Appeal Bd. (Allegheny City Elec., Inc.)*, 981 A.2d 1288, 1292 (Pa. 2009); *Edwards v. Workers' Comp. Appeal Bd. (MPW Indus. Serv., Inc.)*, 858 A.2d 648, 652 (Pa. Cmwlth. 2004).

4

taken no additional evidence, the Board is required to accept facts found by the WCJ if they are supported by competent evidence. *Birmingham Fire Ins. Co. v. Workmen's Comp. Appeal Bd. (Kennedy)*, 657 A.2d 96, 98 (Pa. Cmwlth. 1995). On appeal from a decision of the Board, this Court must view the evidence in the light most favorable to the prevailing party. *Id.*

At the hearing before the WCJ, Employer presented the deposition testimony of Claimant's work supervisor Mr. Lou Morsa. Mr. Morsa was notified by Employer's nurse practitioner Shawn Jackson (Nurse Jackson) that Claimant was released to full-duty with several accommodations. (C.R., Item 25, Morsa Deposition, at 8.) First, for the first few weeks, Claimant would work with another employee. *Id.* at 9. Claimant would then have a decreased workload on his route for approximately one week, after which he would resume full duty. *Id.* Mr. Morsa discussed this plan with Claimant at the end of August 2015. *Id.* at 10. Furthermore, even though Claimant returned to work at sixty percent capacity, Claimant was offered a route that was more lucrative for him than his prior route. *Id.* at 10-11. Claimant declined the offer, did not return to work, and failed to provide a medical note documenting his inability to return to work. *Id.* at 11. Employer ultimately terminated Claimant for job abandonment. *Id.* at 12.

Employer presented the following pertinent deposition testimony of one of Claimant's physicians, Dr. David Alan Gordon. According to Dr. Gordon, he first

5

examined Claimant in February 2015. (C.R., Item 24, Dr. Gordon Deposition at 10.) At that examination, Claimant offered no prior medical history, and Dr. Gordon believed Claimant's diagnosis and need for treatment related to the November 19, 2014 work injury. *Id.* at 11-12. Claimant treated with Dr. Gordon on several occasions, with his last examination taking place on August 24, 2015. *Id.* at 13-14. At that final appointment, Dr. Gordon and Nurse Jackson discussed with Claimant plans for his return to work. *Id.* at 15. Initially, Claimant would start at sixty percent of his required workload over a three-week period. *Id.* at 15. Dr. Gordon and Nurse Jackson devised the plan with a physical therapist involved in Claimant's care, believing such a "work hardening program" would allow Claimant to return to work at his former job. *Id.* at 16. Dr. Gordon did not believe on August 24, 2015 that Claimant was fully recovered from his injury and capable of performing his pre-injury full-duty work. *Id.* at 17. Dr. Gordon opined, however, that Claimant was capable of returning to modified work as of August 24, 2015, and Claimant's treatment team believed his lifting capacity exceeded Claimant's self-reported 15-pound limit. *Id.* at 19, 53.

Employer further offered the deposition testimony of Dr. Mario Littman, another of Claimant's physicians. Dr. Littman testified that he began treating Claimant on May 19, 2015. (C.R., Item 16, Deposition of Dr. Littman at 6.) With respect to the November 19, 2014 work injury, Dr. Littman diagnosed Claimant with

aggravation of lumbar radiculopathy and herniated discs. *Id.* at 16. He opined that Claimant was disabled from returning to his pre-injury tasks, but he could probably work in a light-duty capacity. *Id.* When questioned about Claimant's prior history of back pain, Dr. Littman agreed that his 2015 diagnosis was similar to one of lumbar radiculopathy made by Dr. Jeremy Simon in 2012. *Id.* at 22. The 2012 treatment plan was also similar to that recommended by Dr. Littman. *Id.* To Dr. Littman's knowledge, Claimant did not follow through with the 2012 treatment plan. *Id.* at 23. Dr. Littman agreed it was impossible to know, in the absence of an earlier MRI, whether Claimant's 2014 injury was a worsening of his pre-existing lumbar condition. *Id.* at 24.

At a December 16, 2015 hearing before the WCJ, Claimant acknowledged having a discussion with Dr. Gordon on August 24, 2015 concerning his return to work at a certain level and building up to full duty. (C.R., Item 12, Transcript of Testimony (T.T.) at 18-19.) Claimant further recalled a conversation with Nurse Jackson, who stated Claimant was cleared to go back to light-duty work. *Id.* at 19. Dr. Gordon was present for that conversation. *Id.* Claimant agreed with the plan to go back to work at light duty but he did not return to work. *Id.* at 19-20. Claimant recalled receiving a voice mail from someone within Employer's Human Resources department but admitted he did not respond to that call. *Id.* at 20. Claimant believed he was terminated by Employer because he did not respond to a request to return to

a full-duty position. *Id.* Claimant testified he contacted his supervisor Mr. Morsa about returning to light duty, but asserted he was never offered a job consistent with the recommendations made by Dr. Gordon. *Id.* at 13.

With regard to any pre-existing injuries, Claimant testified that before the 2014 work injury, he had no prior complaints of low back injury or left leg pain and that he never sought medical treatment for back problems. (C.R., Item 12, T.T. at 8, 15-18.) On cross examination, Claimant specifically denied treating with Dr. Simon on August 8, 2012 for complaints of low back and left leg pain. *Id.* at 15-16. Claimant's assertion that Dr. Simon's treatment was solely related to a wrist injury was directly contradicted by Dr. Simon's consultation notes dated August 8, 2012, in which Dr. Simon discussed Claimant's physical symptoms of low back and left lower extremity pain, related his impression that Claimant suffered from lumbar radiculopathy, low back pain, and likely lumbar disc herniation, and suggested a treatment plan. (C.R., Item 16, Exhibit D.)

In his decision, the WCJ found Claimant credible only as to the occurrence of the 2014 work injury, which Employer admitted. (WCJ Decision, Finding of Fact (F.F.) 10.) As to the remainder of Claimant's testimony, the WCJ explicitly discredited Claimant's version of events regarding the job offer and the nature and extent of his disability. *Id.* The WCJ consequently rejected Claimant's testimony

to the extent it conflicted with the testimonies of Dr. Gordon and Mr. Morsa. *Id.* The WCJ found Mr. Morsa's testimony credible and persuasive. *Id.*, F.F. 14.

With regard to the medical testimony, the WCJ found Dr. Littman's testimony to be unpersuasive and not as credible as that of Dr. Gordon, in part because Dr. Littman made several concessions after his review of Claimant's 2012 medical records, which took place approximately one week before Dr. Littman's deposition. (WCJ Decision, F.F. 19.) The WCJ found, however, that Dr. Littman's testimony was not incompatible with a finding that Claimant could return to work. *Id.* The WCJ further found the testimony of Dr. Gordon to be credible and persuasive. *Id.*, F.F. 23.

It is solely for the WCJ, as factfinder, to assess credibility, resolve conflicts in the evidence, and determine what weight to give to any evidence. *McCabe v. Workers' Comp. Appeal Bd. (Dep't of Revenue)*, 806 A.2d 512, 516 (Pa. Cmwlth. 2002). This Court may not reweigh the evidence or review the credibility of the witnesses. *Bethenergy Mines*, 612 A.2d at 437.

Citing *Hill v. Workers' Compensation Appeal Board (Ballard, Spahr, Andrews & Ingersoll)*, 824 A.2d 358 (Pa. Cmwlth. 2003), Claimant argues that the job, as offered, was not within his restrictions and, therefore, any plans to accommodate those restrictions is irrelevant. For this reason, Claimant asserts that Employer did not meet the second prong in *Kachinski* which requires a showing that

9

Employer offered a referral to a then-open job within the occupational category for which Claimant was given medical clearance.

Claimant's reliance on *Hill* is misplaced. In *Hill*, the employer offered no evidence whatsoever regarding the referral in question. The only evidence of record regarding the position offered came from the claimant herself. This Court stated that while a "scintilla of evidence" might have existed that an appropriate referral was made, the record was itself "bereft of any evidence showing that the referred jobs were both open and available, or showing that the jobs fit" within the claimant's restrictions. *Hill*, 824 A.2d at 363.

In the instant matter, the record is far more robust. The evidence established that a return-to-work plan was developed by a team of medical professionals which included Dr. Gordon, Nurse Jackson, and Claimant's physical therapist. Dr. Gordon and Nurse Jackson discussed this plan with Claimant. Mr. Morsa contacted Claimant and discussed the details of Claimant's return to work and offered him a position starting Claimant at light duty and gradually returning him to full duty. The WCJ accepted this testimony as credible and found Claimant not credible. Employer's compliance with the second *Kachinski* requirement is supported by substantial evidence.

As to the third requirement, it is undisputed Claimant declined the job offered him by Employer. It is the claimant's burden to demonstrate he, in good

10

faith, followed up on the job offered. *Assoc. Plumbing & Heating v. Workmen's Comp. Appeal Bd.*, 560 A.2d 865, 869 (Pa. Cmwlth. 1989). If he fails to make such a showing, his benefits can be modified. *Kachinski*; *see also Muretic v. Workers' Comp. Appeal Bd. (Dep't of Labor and Indus.)*, 934 A.2d 752 (Pa. Cmwlth. 2007) (benefits may be suspended where claimant refused a job offer in bad faith). Employer offered Claimant a position that accommodated his medical restrictions and Claimant rejected that offer. Because Claimant's testimony was deemed not credible, there is no evidence of record to support a finding that Claimant in good faith followed through with the position offered to him. The Board agreed with the WCJ's finding that Claimant was offered a light-duty job that would have paid him wages equal to or greater than his pre-injury wage. (WCJ Decision, F.F. 14.) Claimant did not accept that job, and the WCJ suspended Claimant's benefits accordingly.

## III. Conclusion

For these reasons, we affirm the order of the Board.

_____
ELLEN CEISLER, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sekou Thiams,                  :
              Petitioner      :
                   :
          v.            :  No. 1039 C.D. 2017
                   :
Workers' Compensation Appeal  :
Board (Canada Dry Delaware    :
Valley),                   :
             Respondent   :

# O R D E R

AND NOW, this 6th day of February, 2018, the order of the Workers' Compensation Appeal Board, dated July 5, 2017, is hereby affirmed.

_____
ELLEN CEISLER, Judge