Michael BLONG, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (FLUID CONTAINMENT, INSERCO INSURANCE SERVICE AND GALLAGHER BASSETT SERVICES), Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 23, 2005.

Decided Jan. 19, 2006.

---

James A. Garver, Altoona, for petitioner.

Heather A. Harrington, Hollidaysburg, for respondent.

BEFORE: COLINS, President Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Michael Blong (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) affirming a Workers' Compensation Judge's (WCJ) decision to suspend disability benefits after concluding that Claimant had removed himself from the workforce. In this case, we consider whether moving to New Zealand constitutes removing oneself from the work force, thereby authorizing the suspension of benefits.

Claimant sustained a bilateral carpal tunnel injury to his wrists and hands in the course of his employment with Fluid Containment (Employer) on September 21, 1998, for which he was awarded compensation. In November 2003, Employer notified Claimant of an Independent Medical Examination (IME) scheduled for December 3, 2003, to assess Claimant's work-related injury.[1] Claimant's counsel in-formed Employer that Claimant would be unable to attend the IME because he had recently moved to New Zealand. Employer then filed a petition to terminate or suspend benefits because Claimant had voluntarily removed himself from the workforce by leaving Pennsylvania and taking up residence in New Zealand. Claimant filed an answer to the petition admitting that he had moved to New Zealand to reside there with his wife, a native of the country, but he denied that he had removed himself from the workforce. The case then was assigned to a WCJ for a decision.

The WCJ scheduled a hearing for January 14, 2004. Claimant did not attend because he was in New Zealand, but his attorney who was present argued that Claimant's benefits should not be terminated or suspended simply because he moved to New Zealand. No evidence was offered to show that Claimant had obtained employment in New Zealand. Additionally, the parties stipulated that Claimant did not attend the IME scheduled for December 9, 2003. Because Claimant was not ordered by the WCJ to attend an IME pursuant to the Workers' Compensation Act (Act),[2] the parties agreed to delay

1. A Board Order, dated October 3, 2003, affirmed a WCJ decision denying an earlier petition for termination filed by Employer. In that WCJ decision, Claimant's treating physician released Claimant to return to work with restrictions for medium-duty work, with instructions to avoid repetitive gripping or grasping with the right hand. Findings of Fact 4, WCJ Decision, June 16, 2004 (F.F.—).

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4–2501–2626. Section 314(a) of the Act, 77 P.S. § 651, provides in pertinent part,

(a) At any time after an injury the employe, if so requested by his employer, must submit himself at some reasonable time and place for a physical examination or expert interview by an appropriate health care provider or other expert, who shall be selected and paid for by the employer. If the employe shall refuse upon the request of the employer, to submit to the examination or expert interview by the health care provider or other expert selected by the employer, a workers' compensation judge assigned by the department may, upon petition of the employer, order the employe to submit to such examination or expert interview at a time and place set by the workers' compensation judge and by the health care provider or other expert selected and paid for by the employer or by a health care provider or other expert designated by the workers' compensation judge and paid for by the employer.

disposition of that issue.[3]

Where an employer seeks to prove that an injured employee has earning power, notwithstanding a work-related injury, the employer must present evidence that the employee can perform jobs in the employee's "usual employment area." Section 306(b)(2) of the Act, 77 P.S. § 512(2).[4] If the employee does not "live in this Commonwealth, then the usual employment area where the injury occurred shall apply." *Id.* Because Claimant had moved to New Zealand, the WCJ reasoned that for Employer

> To establish the Claimant has earning power in the usual employment area where the injury occurred pursuant to Section 306(b)(2) would be 'irrelevant and fruitless'. . . .

WCJ Decision at 2. Concluding that Claimant had voluntarily removed himself from the workplace, the WCJ suspended benefits. However, the WCJ denied Employer's termination petition. The Board affirmed the WCJ's decision, and Claimant now petitions this Court for review.[5]

Claimant presents one issue for our consideration. Claimant contends that the WCJ erred in determining that Claimant had removed himself from the workforce simply by moving to New Zealand. Claimant contends that Employer should have been required to prove that there were jobs in the Mt. Union area, where Claimant had been employed at the time he was injured, that Claimant was capable of performing. In the absence of such evidence, Claimant argues that his benefits should not have been suspended.

---

3. At the hearing, the WCJ and Employer's counsel had the following colloquy:

   **Judge Vonada:** ... With respect to the 314 examination, the normal procedure would be to have the Employer reschedule the examination and I would issue a Section 314 Order for the Claimant to attend.

   **Attorney Dugas:** We'll agree to the procedure you just proposed so that you can wait until you hear from me before you want to schedule the exam. Because I don't know if we're going to do it in New Zealand or whether we're going to have him flown back here for the exam, or whether we're going to have one at all.

   **Judge Vonada:** ... So if Employer wants to move forward on that, you can advise as to how the examination is to be scheduled and request a Section 314 Order.

   WCJ Hearing, January 14, 2004, at 11–12.

4. It states

   (2) "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can,

considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. *If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply.* If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation. The vocational expert shall comply with the Code of Professional Ethics for Rehabilitation Counselors pertaining to the conduct of expert witnesses.

77 P.S. § 512(2) (emphasis added).

5. Our scope of review of the Board's order is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Acme Markets, Inc. v. Workers' Compensation Appeal Board (Purcell),* 819 A.2d 143, 146 n. 2 (Pa.Cmwlth.2003).

The WCJ based his conclusion upon our holding in *Smith v. Workers' Compensation Appeal Board (Dunhill Temporary Systems)*, 725 A.2d 1285 (Pa.Cmwlth.1999). In *Smith,* the claimant suffered a work-related injury for which he was awarded total disability benefits. While still receiving these benefits, the claimant accepted a position with the Peace Corps and moved to Ghana, West Africa. The employer filed a suspension petition based on the fact that the claimant had voluntarily removed himself from the workforce, and the petition was granted. The claimant petitioned this Court for review, contending that because he never unequivocally stated that he was removing himself from the workforce, the employer was still required to show either a change in condition or job availability under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987).[6] We disagreed with the claimant, reasoning as follows:

> Claimant has voluntarily removed himself from the workforce by joining the Peace Corps and moving to West Africa. Claimant obviously cannot perform activities with the Peace Corps in West Africa and at the same time be available for job referrals in the Wilkes–Barre area. *Much like a person who is incarcerated or a retiree, Claimant's present loss of earning power is not a result of his disability but is because of his voluntary decision to join the Peace Corps and move to another continent.* To require Employer to establish a change in condition or job availability is a result that would be "irrelevant and fruitless" when Claimant has removed himself from the workforce by joining the Peace Corps and has moved to West Africa. Consequently, the Board did not err in

6. *Kachinski,* the seminal case dealing with the proof requirements for a party seeking to suspend, terminate or modify benefits, set forth a four prong test, requiring that:

> (1) The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must produce medical evidence of a change in condition.
> (2) The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance.
> (3) The claimant must then demonstrate that he has in good faith followed through on the job referral(s).
> (4) If the referral fails to result in a job, the claimant's benefits should continue.

*Kachinski,* 516 Pa. at 251–52, 532 A.2d at 379–80. However, in *Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.),* 550 Pa. 276, 705 A.2d 432 (1997), our Supreme Court held that an employer does not have to prove all four *Kachinski* factors in every case where it seeks a suspension of benefits. The Court stated,

> [H]istory has shown that the four prong analysis of *Kachinski* is not to be rigidly applied to situations in which an employer seeks to suspend or terminate a claimant's benefits because the claimant's loss of earning power is no longer caused by the work related injury but rather by something unrelated to the work injury ... Also, this Court and the Commonwealth Court have consistently held that an employer does not need to demonstrate that a claimant is physically able to work or that available work has been referred to claimant where the claimant has voluntarily retired or **withdrawn from the workforce.**
> [A] party does not have to prove every prong of *Kachinski* where the facts demonstrate that the changed circumstances of a claimant's disability would make the showing of all four *Kachinski* factors irrelevant and fruitless. To hold otherwise would result in courts promoting form over substance.

*Id.* at 283–284, 705 A.2d at 436. (emphasis added) (citations omitted). This Court, in *Smith,* determined that even though *Banic* dealt with a claimant who was incarcerated, the Supreme Court's reasoning is equally applicable to the claimant in *Smith.* *Smith,* 725 A.2d at 1287.

suspending Claimant's disability benefits.

*Smith,* 725 A.2d at 1287 (emphasis added). Claimant argues, however, that his situation can be distinguished from that in *Smith.*

In *Smith,* this Court found that claimant had voluntarily removed himself from the workforce, reasoning, in part, that "Claimant obviously cannot perform activities with the Peace Corps in West Africa and at the same time be available for job referrals in the Wilkes–Barre area." *Smith,* 725 A.2d at 1287. Here, Claimant is not performing new work in New Zealand—he has simply moved there. The question is whether, in light of this move, he is available for jobs in the Mt. Union area. It is true that unlike the Claimant in *Smith,* Claimant is not occupied by the Peace Corps, but we do not believe that fact was critical to the holding in *Smith.*

Claimant has not put any evidence on the record that his move to New Zealand is temporary. In *Smith,* the claimant's move to Africa was a temporary assignment, after which, presumably, he would return to the United States. The critical fact in *Smith* was not that the claimant was occupied in Africa but that by being in Africa, jobs in the Wilkes–Barre area were irrelevant. To follow Claimant's logic would lead to the rule that people who move to another continent would be eligible for compensation if they were indolent, but not if they were engaged in a worthy activity such as the Peace Corps.

The critical fact is removal. As in *Smith,* it would be a futile undertaking for Employer to find jobs suitable for Claimant in the Mt. Union area. Claimant has removed himself from that workplace and offered no indication that he intends to move back to the United States should he learn of suitable employment in Mt. Union. In sum, Claimant has removed himself from the workplace with as much certainty as one who becomes incarcerated or one who decides to retire.

Accordingly, the decision of the Board is affirmed.

## ORDER

AND NOW, this 19th day of January, 2006, the order of the Workers' Compensation Appeal Board dated July 6, 2005, in the above-captioned matter is hereby affirmed.