IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Ellen Chesik,                              :
                        Petitioner              :
                                                :
             v.                                 : No. 758 C.D. 2015
                                                : Submitted:  October 9, 2015
Workers' Compensation Appeal                    :
Board (Department of Military and               :
Veterans' Affairs),                             :
                        Respondent              :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
PRESIDENT JUDGE PELLEGRINI              FILED: November 9, 2015


         Mary Ellen Chesik (Claimant) petitions for review of the order of the
Workers' Compensation Appeal Board (Board) affirming the decision of a
workers' compensation judge (WCJ) who granted the petition of the Department of
Military and Veterans' Affairs (Employer) to suspend Claimant's workers'
compensation benefits under the Pennsylvania Workers' Compensation Act (Act)[1]
because she had voluntarily withdrawn from the workforce.  We reverse.

         In July 2009, Claimant suffered a cervical sprain/strain injury while in
the course of her employment with Employer.  Pursuant to a Notice of

_____
    [1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

Compensation Payable (NCP), Claimant received $418.00 in weekly compensation benefits. In March 2013, Employer filed a petition to suspend Claimant's benefits alleging that "Claimant has moved to Nevada and has voluntarily removed herself from the workforce…." (Reproduced Record (RR) 3a).[2]

---

[2] Section 306(b)(2) of the Act provides:

> (2) "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. *If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply.* If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation….

77 P.S. §512(2) (emphasis added).

As the Supreme Court has explained:

> In *Riddle v. WCAB (Allegheny City Elec., Inc.)*, [981 A.2d 1288 (Pa. 2009)], a majority of the Court indicated that Section 306(b)(2) "replaced" the common law *Kachinski* [*v. Workmen's Compensation Appeal Board (Vepco Construction Co.*, 532 A.2d 374 (Pa. 1987)] approach and credited the Commonwealth Court's "holding that the 1996 amendment eliminated the *Kachinski* requirement[.]" *Id.* at 1292. The *Riddle* majority, however, also added a footnote suggesting that *Kachinski* may play a continuing

**(Footnote continued on next page…)**

**(continued…)**

> role. In this regard, the majority concluded that, by adopting Section 306(b)(2), the Legislature "lowered" the *Kachinski* burden of proof by "allowing" an employer to obtain modification or suspension of benefits on evidence of earning power proved through expert testimony rather than by providing evidence that the claimant had obtained employment. *Id.* at 1292 n.8. The footnote also relates that the *Kachinski* test continues to apply "exclusively only" in pre-amendment cases.

*City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson)*, 67 A.3d 1194, 1198 n.4 (Pa. 2013).

Nevertheless, in cases such as this where the suspension of benefits is sought because the claimant has allegedly removed herself from the workforce, the Supreme Court explained:

> We will take this opportunity to make clear the analytical paradigm that applies in cases involving an employer's petition to suspend or modify benefits premised upon the claimant's alleged voluntary withdrawal from the workforce, as evidenced only by acceptance of a pension. Where the employer challenges the entitlement to continuing compensation on grounds that the claimant has removed himself or herself from the general workforce by retiring, the employer has the burden of proving that the claimant has voluntarily left the workforce. There is no presumption of retirement arising from the fact that a claimant seeks or accepts a pension, much less a disability pension; rather, the worker's acceptance of a pension entitles the employer only to a permissive inference that the claimant has retired. Such an inference, if drawn, is not on its own sufficient evidence to establish that the worker has retired-the inference must be considered in the context of the totality of the circumstances. The factfinder must also evaluate all of the other relevant and credible evidence before concluding that the employer has carried its burden of proof.
>
> If the employer produces sufficient evidence to support a finding that the claimant has voluntarily left the workforce, then the burden shifts to the claimant to show that there in fact has been a compensable loss of earning power. Conversely, if the employer

**(Footnote continued on next page…)**

At deposition, Claimant testified that she moved to Lovelock, Nevada, in December 2012, and that she is living by herself with no family, dependents or relatives in the area. (RR 92a, 93a). She stated that she moved to Nevada for its warmer climate because her body does not do well with the moisture and dampness in her former hometown of Scranton, Pennsylvania. She testified, "I do have lupus and fibromyalgia also, and that was the main reason why I moved to a warmer climate." (*Id.*). She stated that she was diagnosed with those conditions 12 years earlier. Claimant also testified that another reason she moved to Nevada was because she had met a friend online who lives there and recommended that she move there for the weather, so she visited her friend for two weeks in July 2012 and moved there in December 2012. She stated that she investigated the drier climate there before moving, but that she did not receive "any type of medical clearance" or "authorization or recommendation" from a doctor that she should move to Lovelock, Nevada. (*Id.* 96a, 105a). She testified that she has a Lovelock, Nevada driver's license and that she has not looked for or worked in any employment capacity there. (*Id.* 102a, 106a, 107a).

Claimant stated that she retired from her position with Employer in October 2012 and applied for disability pension benefits in December 2012. (RR

---

**(continued…)**

> fails to present sufficient evidence to show that the claimant has retired, then the employer must proceed as in any other case involving a proposed modification or suspension of benefits.

*Robinson*, 67 A.3d at 1209-10.

4

106a). She testified that prior to moving, she researched other climate conditions on the computer including Arizona and New Mexico, but that the "determining factor was [her] body." (*Id.* 99a-100a). She stated that she "moved for a better quality of life for [her] body" and that she has not received any type of income other than her workers' compensation benefits, Medicare and her disability pension. (*Id.* 102a, 105a-106a). Claimant testified that she came back to Scranton specifically to testify by deposition and that it is her intention to stay in Lovelock, Nevada, for an indefinite period of time. (*Id.* 102a). She stated that she consulted with a physician in Nevada at a spinal institute in February 2013, but she could not recall his name and did not return and has not seen any physicians for her neck since that time. (*Id.* 103a-104a).

Claimant testified that she did not tell her treating doctors that she was planning to move before she moved to Nevada. She stated that she has daily pain in her arms related to her work injury that has been going to her hands the preceding three weeks. She testified that she also believes that she has "a third disc that is compromised" "that's giving [her] a lot of problems with [her] neck," and that prevents her from turning her head to the left with "a lot of pain down [her] neck and down [her] back and [her] arms…." (RR 111a). She acknowledged that when she moved to Nevada, she couldn't work anywhere in Scranton, and that "by moving to Nevada, [she] took [herself] out of the work force at least in Scranton, Pennsylvania" and in the "region." (*Id.* 113a). Nevertheless, she stated that it was not her intention to remove herself from the workforce when she moved to Nevada, and that "If there's a possibility that I could work, I would love to work." (*Id.* 111a).

5

In March 2014, the WCJ issued a decision granting Employer's suspension petition. Citing *Blong v. Workers' Compensation Appeal Board (Fluid Containment)*, 890 A.2d 1150 (Pa. Cmwlth. 2006), and *Smith v. Workmen's Compensation Appeal Board (Dunhill Temporary Systems)*, 725 A.2d 1285 (Pa. Cmwlth. 1999),[3] the WCJ explained that an employer does not need to demonstrate

---

[3] In *Blong*, the claimant was awarded disability benefits due to a bilateral carpal tunnel injury to his wrists and hands. The employer notified the claimant of an Independent Medical Examination (IME) to assess his injury and was informed that the claimant could not attend because he had moved from Pennsylvania to New Zealand to live with his wife who was a native New Zealander. The employer then sought to terminate or suspend the claimant's benefits because he had voluntarily removed himself from the workforce while the claimant admitted that he had moved, but specifically denied that he had removed himself from the workforce. Nevertheless, in affirming the suspension of benefits, this Court explained:

> The WCJ based his conclusion upon our holding in [*Smith*]. In *Smith*, the claimant suffered a work-related injury for which he was awarded total disability benefits. While still receiving these benefits, the claimant accepted a position with the Peace Corps and moved to Ghana, West Africa. The employer filed a suspension petition based on the fact that the claimant had voluntarily removed himself from the workforce, and the petition was granted. The claimant petitioned this Court for review, contending that because he never unequivocally stated that he was removing himself from the workforce, the employer was still required to show either a change in condition or job availability under [*Kachinski*]. We disagreed with the claimant, reasoning as follows:

>> Claimant has voluntarily removed himself from the workforce by joining the Peace Corps and moving to West Africa. Claimant obviously cannot perform activities with the Peace Corps in West Africa and at the same time be available for job referrals in the Wilkes-Barre area. Much like a person who is incarcerated or a retiree, Claimant's present loss of earning power is not a result of his disability but is because of his voluntary decision to join the Peace Corps and move to another continent. To require Employer

**(Footnote continued on next page…)**

6

to establish a change in condition or job availability is a result that would be "irrelevant and fruitless" when Claimant has removed himself from the workforce by joining the Peace Corps and has moved to West Africa. Consequently, the Board did not err in suspending Claimant's disability benefits

*Smith*, 725 A.2d at 1287 (emphasis added). Claimant argues, however, that his situation can be distinguished from that in *Smith*.

In *Smith*, this Court found that claimant had voluntarily removed himself from the workforce, reasoning, in part, that "Claimant obviously cannot perform activities with the Peace Corps in West Africa and at the same time be available for job referrals in the Wilkes-Barre area." *Smith*, 725 A.2d at 1287. Here, Claimant is not performing new work in New Zealand-he has simply moved there. The question is whether, in light of this move, he is available for jobs in the Mt. Union area. It is true that unlike the Claimant in *Smith*, Claimant is not occupied by the Peace Corps, but we do not believe that fact was critical to the holding in *Smith*.

Claimant has not put any evidence on the record that his move to New Zealand is temporary. In *Smith*, the claimant's move to Africa was a temporary assignment, after which, presumably, he would return to the United States. The critical fact in *Smith* was not that the claimant was occupied in Africa but that by being in Africa, jobs in the Wilkes-Barre area were irrelevant. To follow Claimant's logic would lead to the rule that people who move to another continent would be eligible for compensation if they were indolent, but not if they were engaged in a worthy activity such as the Peace Corps.

The critical fact is removal. As in *Smith*, it would be a futile undertaking for Employer to find jobs suitable for Claimant in the Mt. Union area. Claimant has removed himself from that workplace and offered no indication that he intends to move back to the United States should he learn of suitable employment in Mt. Union. In sum, Claimant has removed himself from the workplace

**(Footnote continued on next page…)**

7

that a claimant is physically able to work or that available work has been referred to the claimant where she has voluntarily retired or withdrawn from the workforce. The WCJ found that Claimant "voluntarily removed herself from the workforce, not because of her medical condition with regard to the work injury," "but because of non-work related conditions consisting of lupus and fibromyalgia, which conditions have been preexisting for twelve years." (RR 19a). The WCJ also found that "Claimant failed to even notify her local physicians or seek their approval before moving to Nevada, and her decision to move to what she considered to be a warmer climate is solely her decision, along with her decision to take her pension and remove herself from the workforce." (*Id.*).

Citing *Mendes v. Workers' Compensation Appeal Board (Lisbon Contractors, Inc.)*, 981 A.2d 334 (Pa. Cmwlth. 2009),[4] the WCJ also explained that an employer need not show a change of condition or job availability where the

---

**(continued…)**

> with as much certainty as one who becomes incarcerated or one who decides to retire.

*Blong*, 890 A.2d at 1154 (footnoted omitted).

[4] In *Mendes*, the claimant suffered work-related injuries in the nature of a disc syndrome or herniated nucleus pulposus, ambulatory dysfunction, myofascial pain syndrome and chronic progression and he received benefits pursuant to a supplemental agreement. The employer sought a suspension of his benefits which the WCJ granted on the basis that he had voluntarily removed himself from the workforce when he moved to Portugal seven years earlier. This Court affirmed the suspension, stating that "Here, Claimant, like the claimants in *Blong* and *Smith*, removed himself from the workforce when he chose to reside in Portugal for more than seven years. Employer was not required to meet the *Kachinski* requirement of a change in condition in order to suspend benefits." *Mendes*, 981 A.2d at 335 (footnote omitted).

8

claimant removes herself from the workforce by relocating to another country. The WCJ found that Employer "successfully met its burden of proof to establish that [C]laimant voluntarily removed herself from the workforce" and, as a result, "it is not medically necessary for [Employer] to show a change in physical condition or work availability given [C]laimant's actions by moving from her present local Scranton, PA to Lovelock, Nevada and therefore, removing herself from the workforce locally." (RR 19a). Based on the foregoing, the WCJ concluded that Employer met its burden of proving that Claimant voluntarily removed herself from the workforce and suspended her benefits effective November 3, 2012; and that Claimant voluntarily accepted pension benefits as further evidence that she had voluntarily removed herself from the workforce.

On appeal to the Board, Claimant argued that the WCJ erred in concluding that she voluntarily removed herself from the workforce merely by moving from Pennsylvania to Nevada, and that the WCJ violated the Supreme Court's holding in *Robinson* by concluding that the acceptance of her disability pension benefits was "further evidence that she removed herself from the workforce." The Board rejected these claims, explaining that "Claimant testified she has not sought any employment since her injury, and did not assert she had been forced into retirement," and that "unlike the claimants in Blong, Smith, and Mendes, [she] specifically confirmed she intends to stay in Nevada and never return to live in Pennsylvania again" so "the WCJ did not err in determining [she] had voluntarily removed herself from the workforce." (RR 46a). The Board also determined that the WCJ's decision did not violate *Robinson*, explaining that "Robinson clearly states the factfinder must consider the totality of the

9

circumstances" and that "[t]he WCJ did so in this case, finding while Claimant did elect to take a disability pension from [Employer], she also chose to permanently move to Lovelock, Nevada, where she would no longer be able to accept a job in the Scranton, Pennsylvania area, thus voluntarily removing herself from the workforce." (*Id.* 47a).

In this appeal,[5] Claimant contends that the Board erred in affirming the suspension of benefits because her permanent change of residence from Pennsylvania to Nevada does not constitute a voluntary removal from the workforce as in *Blong*, *Smith* and *Mendes*, and there are no other objective facts in addition to her acceptance of the disability pension[6] to support such a conclusion as required by *Robinson*. We agree.

As noted above, in determining "earning power" under the Act, Section 306(b)(2) provides, in relevant part:

---

[5] In a workers' compensation proceeding, this Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 652 A.2d 797, 799 (Pa. 1995).

[6] Claimant explained that circumstances surrounding her acceptance of the disability pension as follows:

> I knew after three years – being in the state system, being a state employee, I knew that after three years if you were out of work due to an injury, they give you that option of resigning or retiring with benefits or whatever the options were that they offered. That was what I was offered. I didn't resign. I took the disability.

(RR 107a).

10

> Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. *If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply.*

77 P.S. §512(2) (emphasis added). Clearly, Section 306(b)(2) specifically contemplates that Claimant would permanently relocate outside the Commonwealth following her work-related injury and the payment of benefits, and directs how to determine her earning power when the modification or suspension of these benefits is sought.

In *Riddle*, the claimant was injured while working as an electrician in Pittsburgh and received total disability benefits. He subsequently moved to Wheeling, West Virginia and after he was released to light-duty work, the employer sought to modify or suspend his benefits alleging that he had a residual earning capacity requiring a decrease in benefits. In support, the employer presented a vocational expert who testified that after evaluating the claimant, he performed a labor market survey for the Wheeling area, where the claimant now lived, and prepared an earning power assessment report. In the report, the expert identified five available positions in Wheeling, Washington, Pennsylvania, and Ohio. The claimant objected to the use of the report, arguing that it did not comply with the geographical area requirements of Section 512(2) specifying the location of injury, but the WCJ relied on the expert's report for Wheeling to grant the modification petition and reduce the claimant's benefits.

11

On appeal, both the Board and this Court affirmed, but the Supreme Court reversed, explaining:

When it amended Section 306(b) to add subsection (2) in 1996, the General Assembly replaced this Court's *Kachinski* approach. 77 P.S. §512(2); *see Edwards v. Workers' Comp. Appeal Bd. (MPW Indus. Services, Inc.)*, 858 A.2d 648, 651 (Pa. Cmwlth. 2004) (holding that the 1996 amendment eliminated the *Kachinski* requirement that an injured employee be offered an actual job). The legislature amended the [Act] and added the definition of "earning power" at issue here as well as a new standard for proving earning power. The current Section 306(b) does not require that the employer provide the injured employee with a job or specify attributes, such as geographical location, for that job as this Court had previously done in *Kachinski*. 77 P.S. §512; *see Edwards*, 858 A.2d at 651. Rather, the sole purpose of current Section 306(b) is to describe the payment schedule for partial disability and provide a formula for calculating an injured employee's benefits. 77 P.S. §512. The statute defines how earning power is calculated for different categories of claimants, including out-of-state residents. 77 P.S. §512(2).

The calculation under most circumstances only approximates a claimant's "true" earning power. For the majority of employees injured on the job, the Section 306(b) formula is a fairly accurate approximation because it reflects their job market and choices in pursuing employment before the injury. Indeed, the General Assembly weighed competing policies in this area of law and effectively made a policy choice. We must defer to the General Assembly's explicit dictate and cannot alter the clear expression of policy by the General Assembly under the guise of "pursuing its spirit." 1 Pa. C.S. §1921.

The General Assembly defined the method for evaluating "earning power" in unequivocal mandatory language that identifies the area where the injury

12

occurred as the relevant location for non-residents. 77 P.S. §512(2). For this reason, we hold that when developing an [earning power assessment] for such an employee, an employer must focus its job availability analysis on the area where the injury occurred…. *Id.* The employer has no discretion to enlarge its search and focus on multiple or other areas that it decides could yield a "true" assessment of an injured employee's earning power, even if these additional areas overlap with the area where the injury occurred….

*Riddle*, 981 A.2d at 1292-93 (footnote omitted).

Based on the foregoing, it is clear that the WCJ erred as a matter of law in relying on Claimant's permanent relocation to Nevada, standing alone, to support a determination that she had permanently removed herself from the workforce. Such relocation is specifically contemplated by and provided for in Section 306(b)(2) of the Act. Likewise, the WCJ could not solely rely on Claimant's receipt of her disability pension to support the suspension of benefits on the basis that she has permanently separated from the workforce. *See Robinson*, 67 A.3d at 1210 ("There is no presumption of retirement arising from the fact that a claimant seeks or accepts a pension, much less a disability pension; rather, the worker's acceptance of a pension entitles the employer only to a permissive inference that the claimant has retired. Such an inference, if drawn, is not on its own sufficient evidence to establish that the worker has retired–the inference must be considered in the context of the totality of the circumstances."). As a result, the WCJ erred in suspending Claimant's benefits in this case based solely on her move to Nevada and her receipt of a disability pension as there is no other evidence or

13

findings to support the determination that she has permanently removed herself from the workforce.

Accordingly, the Board's order is reversed.

_____
DAN PELLEGRINI, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Ellen Chesik, : 
                Petitioner : 
                 : 
           v. : No. 758 C.D. 2015
                 : 
Workers' Compensation Appeal : 
Board (Department of Military and : 
Veterans' Affairs), : 
                Respondent : 

# **O R D E R**

AND NOW, this 9th day of November, 2015, the order of the Workers' Compensation Appeal Board dated April 7, 2015, at No. A14-0286, is reversed.

_____
DAN PELLEGRINI, President Judge