# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis Smith, :
                Petitioner :
       :
       v. : No. 796 C.D. 2016
       : Argued: September 13, 2017
Workers' Compensation Appeal :
Board (Supervalu Holdings PA, LLC), :
                Respondent :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE JOSEPH M. COSGROVE, Judge[1]

**OPINION**
**BY JUDGE SIMPSON**                **FILED: January 5, 2018**

           Dennis Smith (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed an order of a Workers' Compensation Judge (WCJ) granting a modification petition filed by Claimant's employer, Supervalu Holdings PA, LLC (Employer). Based upon a labor market survey showing five available positions within Claimant's medical restrictions with an average pay of $400.56 per week, the WCJ modified Claimant's weekly benefits to the rate of $394.63. Claimant contends the Board erred in finding substantial evidence for the WCJ's modification of his benefits, and that the Board further erred in concluding that the WCJ properly applied the principles established by the Supreme Court in Phoenixville Hospital v. Workers' Compensation Appeal Board

---

[1] This decision was reached before the conclusion of Judge Cosgrove's service with this Court on December 31, 2017.

(Shoap), 81 A.3d 830 (Pa. 2013). Upon review, we affirm as modified by this opinion.

## I. Background

In February 2011, Claimant sustained a work injury to his head and neck when a case of store products, weighing approximately eight or nine pounds, fell from a shelf above him and struck his head. A temporary notice of compensation payable, which later converted to a notice of compensation payable (NCP), described the accepted injuries as a cervical strain/sprain. Pursuant to the NCP, Claimant began receiving benefits at the rate of $661.67 per week based upon an average weekly wage (AWW) of $992.50.

In November 2013, Employer filed a modification petition seeking to modify Claimant's benefits as of April 28, 2013. Employer's petition further alleged Claimant had an earning power of $440.00 per week, which would reduce Claimant's weekly benefit to $368.33. Claimant filed an answer denying the material allegations of Employer's modification petition. Employer also requested a supersedeas, which the WCJ denied.

In addition, in March 2014 Employer filed a suspension petition alleging Claimant was offered a medical procedure highly likely to cure his disability and return him to gainful employment. Although the procedure had a low potential risk, Claimant nevertheless refused the procedure. Claimant filed a timely answer denying Employer's material allegations. Employer again requested a supersedeas, which the WCJ denied.

2

During the WCJ's proceedings, Employer presented deposition testimony from Dr. Jeffrey A. Baum (Employer's Physician), a physician board certified in orthopedic surgery. Employer's Physician first treated Claimant for a work injury in July 2008 which resulted in numbness, tingling and pain in his upper left extremity. In December 2008, Employer's Physician performed a two-level cervical discectomy and fusion. Claimant did well following the surgery and returned to his forklift driver position. In April 2010, Employer's Physician discharged Claimant from his care.

In June 2011, following his second work injury in February 2011, Claimant returned to Employer's Physician's care. Claimant provided a history of his new work injury and reported symptoms of pain and spasm in his neck. Employer's Physician continued to see Claimant over the next several months, during which time Claimant underwent physical therapy. Claimant continued to report some spasm in his neck, especially if he would repetitively extend his neck backward.

In June 2012, Claimant returned to Employer's Physician's office and saw his partner, Dr. Smith (Partner Physician). At that time, Claimant had more pain and spasm in his neck. Claimant underwent a three-dimensional CT scan, which revealed that his earlier bone graft did not completely fuse the vertebral bodies. Partner Physician advised Claimant of the failure of the fusion and informed him that the standard treatment for a failed anterior fusion is to do a posterior segmental fusion. Employer's Physician testified that studies indicated an 80% chance that the proposed surgery would resolve Claimant's symptoms. Further, although

3

Employer's Physician could not guarantee that Claimant could return to the pre-injury job following the proposed surgery, the doctor testified Claimant would be capable of performing some type of employment with restrictions.

Employer's Physician further testified that in late May or early June of 2013, he was provided with job analyses for the following positions: dispatcher for the American Automobile Association (AAA); dispatcher with Vector Security; dispatcher with St. Moritz Security Services, Inc.; and, security guard with Am-Guard Security, Inc.

Employer also submitted deposition testimony from a vocational rehabilitation counselor, Nikki Davies (Vocational Counselor). She testified that the Department of Labor and Industry approved her to conduct interviews and assess earning power under the Workers' Compensation Act[2] (Act). Vocational Counselor first reviewed information provided by Employer's Physician regarding Claimant's restrictions. Claimant could not lift over 25 pounds with no repetitive overhead lifting and no repetitive neck extensions.

During an interview, Claimant provided Vocational Counselor with a history of his work injury and his employment. Prior to working for Employer, Claimant worked as a lot attendant for Kenny Ross Chevrolet. Utilizing Claimant's work history, educational background and work restrictions, Vocational Counselor performed a transferable skills analysis.

---

[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1041.4, 2501-2708.

Based upon her transferable skills analysis and her interview with Claimant, Vocational Counselor identified five open and available positions within Claimant's vocational and medical restrictions, and which were located within Claimant's geographic area. These positions included dispatcher at AAA; alarm dispatcher operator at Vector Security; dispatcher at St. Moritz Security Services, Inc.; and, two security guard positions with Am Guard Security, Inc.

Vocational Counselor further testified that the weekly pay for the five positions ranged from $360.00 to $440.00 per week. This would equate to an AWW of $400.56.

Before the WCJ, Claimant testified he worked for Employer for 27 years at different positions including forklift operator and loader. Claimant sustained his first work injury in 2008 and began treating with Employer's Physician, who performed cervical fusion surgery and placed hardware in Claimant's neck. Following surgery, Claimant returned to work as a lift operator.

After being bumped for seniority reasons, Claimant began working at the selector position, where he sustained a work injury in February 2011. Claimant was helping a lift operator put cases on overhead shelves when a case slipped and hit him in the head. Following the incident, Employer's Physician removed him from work and prescribed therapy.

In September 2011, Claimant returned to light duty work in the dairy warehouse. He worked in that position until May or June 2012. During that time,

he continued to experience pain and spasms in his neck. Employer's Physician removed him from work in June 2012. Diagnostic studies revealed a non-union of the grafts in his cervical spine. Employer's Physician discussed possible surgery to address the non-union of the grafts. However, Claimant continued, Employer's Physician informed him that fixing the non-union would not make him any better. Further, Claimant testified Employer's Physician never told him there would be an 80% chance that he would have a pretty good resolution of his symptoms. Thus, Claimant testified he was afraid to undergo the proposed surgery, which would not enable him to return to his pre-injury job.

Claimant also testified about meeting with Vocational Counselor and applying for the five positions she identified as being available for him. Claimant submitted a resume online to St. Moritz Security Services for the dispatcher position. However, St. Moritz never contacted him or offered him employment. Claimant further testified he never worked as a dispatcher.

Claimant also submitted an application to Vector Security for the alarm dispatch position. However, Vector Security never contacted him or offered him employment. Claimant testified the position required moderate to advanced keyboarding skills, which he did not have.

Claimant also contacted AAA about the dispatcher job and spoke to Liz Jackson in Human Resources. Jackson instructed Claimant to submit a resume, which he did. However, AAA never contacted him or offered him employment.

6

In addition, Claimant contacted Am-Guard about the two security guard positions. Claimant spoke with a gentleman who instructed him to go to the Career Link Center in Youngwood and complete an application. Claimant completed the applications and was interviewed for the positions. However, Claimant received no further contact from Am-Guard, and Am-Guard never offered him employment.

Claimant further testified he applied for numerous other positions on his own. However, nobody interviewed him or offered him employment.

Ultimately, the WCJ accepted Vocational Counselor's testimony as credible and persuasive. WCJ's Op., 12/29/14, Finding of Fact (F.F.) No. 11. Although Claimant testified he applied for each of the five positions and was not hired, the WCJ found "there is nothing in the record to indicate that the five job positions were not open and available at the time of his application process, nor is there any evidence in the record to indicate that they were already filled, and did not exist." Id. Consequently, based on Vocational Counselor's testimony that the five positions equated to an AWW of $400.56, the WCJ reduced Claimant's AWW as follows: $992.50 - $400.56 = 591.94 x 66 2/3% = $394.63 weekly benefit rate, effective April 28, 2013. Id.

In addition, the WCJ found, based on Employer's Physician's testimony, that the proposed posterior segmental fusion surgery would not decrease Claimant's disability or restore any of his earning power. F.F. No. 12. Therefore, the WCJ determined Claimant's reluctance to undergo the posterior segmental fusion did not amount to a refusal of reasonable medical treatment. Id.

7

Consequently, the WCJ denied Employer's suspension petition. However, the WCJ granted Employer's modification petition and modified Claimant's weekly benefit rate to $394.63, effective April 28, 2013.

Both parties appealed to the Board, which affirmed the WCJ's decision. In affirming the WCJ's grant of Employer's modification petition, the Board rejected Claimant's arguments that the positions were not within his vocational capabilities and geographic area. To that end, the Board noted Vocational Counselor's testimony that the five positions fell within Claimant's transferable skills analysis. Bd. Op., 4/19/16, at 10. The Board further observed that Vocational Counselor testified that for someone living where Claimant did in Lowber, Pennsylvania, Westmoreland County and Allegheny County would be considered normal geographic areas for finding employment. Id. at 11. In particular, Vocational Counselor testified that each of the five identified positions were located within the normal geographical range for someone where Claimant lived to find employment. Id.

The Board also rejected Claimant's arguments that the positions must be open and available, and that the WCJ shifted the burden to Claimant to prove that the positions were not available, thereby improperly applying Phoenixville.

Section 306(b)(2) of the Act,[3] which discusses how a partially disabled claimant's "earning power" shall be determined, states: "Disability partial in character shall apply if the employe is able to perform his previous work or can,

_____

[3] Added by the Act of June 24, 1996, P.L. 350, as amended.

8

considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth." 77 P.S. §512(2) (emphasis added). The Board recognized that the Supreme Court interpreted the phrase "substantial gainful employment which exists" to mean the "existence of meaningful employment opportunities, and not the simple identification of jobs found in want ads or employment listings." Phoenixville, 81 A.3d at 842-43. Further, to establish earning capacity, the legislature intended that the employer must prove "the existence of *open* jobs that the claimant is capable of filling, not simply the existence of jobs that are already filled …." Id. at 843. In short, the jobs identified must "be those jobs that are actually open and potentially available, not simply jobs that are already filled with existing employees." Id. (emphasis added)

Here, the Board reasoned Employer bore the burden to establish only that the positions identified in the labor market survey were open and actually available to Claimant at the time the survey was conducted. Bd. Op. at 12 (citing Rebeor v. Workers' Comp. Appeal Bd. (Eckerd), 976 A.2d 655 (Pa. Cmwlth. 2009)). In the present case, Vocational Counselor testified these positions were open at the time of her survey. The Board also noted that Claimant applied for these positions, which apparently remained open, and that there was "no indication that any evidence was presented that the positions were not open as of the time [Vocational Counselor] conducted her survey." Bd. Op. at 13 (emphasis added).

9

Nevertheless, the Board noted that the Supreme Court's decision in Phoenixville provides a claimant with the opportunity to present evidence that he applied for the indicated positions, but that none were open. The Board then observed that the WCJ found there was nothing in the record to indicate the five positions were not open and available at the time of Claimant's application. Bd. Op. at 14. To that end, the Board stated: "Claimant was given the opportunity to present evidence that he called or applied for the positions but none were open or available to him for employment; however, the WCJ found no evidence to support Claimant's contention that none were open or available. As such, the WCJ did not transfer the burden to Claimant to prove the positions were not open and we see no error." Id. (emphasis added). Therefore, the Board affirmed the WCJ's grant of Employer's modification petition.

In addition, the Board denied Employer's suspension petition. As noted, the Board determined the proposed posterior segmental fusion surgery would not decrease Claimant's disability or restore any of his earning power. Therefore, the WCJ determined Claimant did not refuse reasonable medical treatment. Id.

Having denied the parties' appeals, the Board affirmed the WCJ's order. Claimant petitions for review.[4]

## II. Discussion

---

[4] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

10

## A. Substantial Evidence

### 1. Argument

Claimant first contends the Board erred in determining that substantial evidence of record supports the WCJ's decision modifying his benefits. In particular, Claimant asserts the Board erred in concluding that Vocational Counselor identified five open and available positions through her transferable skills analysis. In support of his position, Claimant cites Vocational Counselor's testimony on cross-examination that none of the five identified positions were located through Claimant's transferable skills analysis, and that Claimant never worked in customer service, as a security guard, or as a dispatcher. See Dep. of Nikki Davies, 3/12/14, at 36-38; R.R. at 36a-38a. Thus, Claimant argues, Vocational Counselor improperly and illogically concluded that the five identified jobs fell within Claimant's vocational capabilities.

In sum, Claimant asserts, the WCJ's decision to modify his benefits, based entirely on a finding that Vocational Counselor located the five identified positions using her transferable skills analysis, is not supported by substantial evidence. Moreover, Claimant argues, the WCJ's modification of Claimant's benefits is not supported by any evidence in the record.

Claimant further contends the WCJ erred by failing to consider that in addition to the five positions identified by Vocational Counselor, Claimant applied for jobs with 16 different employers and could not obtain any interviews or offers of employment. Claimant asserts this evidence is directly relevant to a determination of his earning power.

11

## 2. Analysis

In response to Claimant's argument, Employer asserts Vocational Counselor's testimony, viewed in its entirety, provides substantial evidence for the WCJ's modification of Claimant's benefits. To the extent Vocational Counselor opined that Claimant could perform the duties of all five positons, we agree.

As Claimant asserts, Vocational Counselor testified on direct examination that the different types of employment options located through the transferable skills analysis included such positions as lot attendant; mail clerk; route delivery clerk; and, stuffer. Davies Dep. at 12; R.R. at 12a. However, Vocational Counselor further testified these positions were "just an example." <u>Id.</u> Further, when asked if those four occupations were the only occupations Claimant was capable of performing, Vocational Counselor testified:

> No. There were many more that came out of the transferable skills analysis. I was only giving a limited view on my report of what positions were located in the transferable skills analysis, <u>but there are many entry level positions that would be looked into during the labor market survey for the earning power assessment that would provide on the job training for a person to perform a position</u>.

Davies Dep. at 13; R.R. at 13a (emphasis added).

Specifically, regarding the five identified positions, Vocational Counselor testified that each of the five positions required only a high school diploma and that each employer was willing to train an employee as to all necessary

12

job skills. See Davies Dep. at 17-26; R.R. at 17a-26a. Although Claimant never performed these positions, the WCJ credited Vocational Counselor's testimony that they were entry level positions with on-the-job training and therefore fell within Claimant's vocational abilities. F.F. No. 9.

In addition, we reject Claimant's contention that the WCJ failed to consider that he also applied for jobs on his own and was unable to obtain any interviews or offers of employment. The WCJ noted this fact in Finding of Fact No. 10, thus indicating he considered it. However, the WCJ credited Vocational Counselor's testimony that the five identified positions in her labor market survey fell within Claimant's physical, medical and vocational abilities. F.F. No. 11.

In workers' compensation cases, the WCJ is the ultimate fact-finder and therefore has exclusive province over questions of credibility and evidentiary weight. A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233 (Pa. Cmwlth. 2013). The WCJ may accept or reject the testimony of any witness in whole or in part. Id. Further, it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; our critical inquiry is whether there is evidence to support the findings the WCJ actually made. Furnari v. Workers' Comp. Appeal Bd. (Temple Inland), 90 A.3d 53 (Pa. Cmwlth. 2014). Here, the WCJ's credibility findings are supported by the record.

**B. Phoenixville**

**1. Argument**

13

Claimant also contends the WCJ, in determining the five identified positions were actually open and available, erred in failing to apply the principles established by the Supreme Court in Phoenixville. In particular, with respect to the term "substantial gainful employment which exits," the Court stated:

> [I]n order for the term 'substantial gainful employment which exists' to be meaningful within the context of the Act, it must encompass more than the mere existence of jobs compatible with a claimant's restrictions that happen to be open at the time they are discovered by the employer's expert witness, as the Commonwealth Court held in this case. The statutory concept of 'substantial gainful employment which exists' would be meaningless with respect to a claimant's actual medical and vocational circumstances unless the jobs identified by the employer's expert witness, which are used as proof of earning power under Section 306(b), remain open until such time as the claimant is afforded a reasonable opportunity to apply for them. Otherwise, the legislatively selected terms 'earning power,' 'substantial_gainful employment' and 'exists,' would become mockeries of their commonly understood meanings. See 1 Pa. C.S. §1903(a) ('Words and phrases shall be construed to … their common and approved usage').

Phoenixville, 81 A.3d at 845 (emphasis by underline added).


Here, Claimant asserts, Vocational Counselor had no idea whether any of the five identified positions were open and available beyond the date she contacted the prospective employers. Further, although given the opportunity, Employer presented no evidence that would have established the five positions were still open and available when Claimant made his applications.

Claimant also contends the WCJ improperly shifted the burden of proof to Claimant by concluding in Finding of Fact No. 11 that although Claimant was not hired for any of the five positions, there was nothing in the record to show that those positions were not open and available at the time of Claimant's application.

In addition, Claimant asserts the Board determined, as the WCJ found, "Claimant was interviewed for some of the positions, indicating such positions were clearly open." Bd. Op. at 13-14. Therefore, Claimant argues, the Board erroneously confirmed the WCJ's determination that all five of the positions were open and available at the time Claimant applied for them.

Summarizing, Claimant argues Employer presented no evidence that the five identified positions were open and available beyond the date Vocational Counselor contacted the prospective employers. Consequently, neither the WCJ nor the Board had any evidence to support their conclusions that these five positions were still open and available at the time Claimant completed his applications. Therefore, Claimant argues Employer could not establish he had a reasonable opportunity to apply for these positions as required by Phoenixville.

## 2. Analysis

### a. Recent Cases

In Phoenixville, the Court addressed the modification of workers' compensation benefits generally, and the process of proving residual earning power of a partially disabled claimant through a labor market survey and expert testimony in particular. The Court noted that "an employer is required to establish the existence of substantial gainful employment that is compatible with the claimant's

residual productive skills, education, age, and work experience ....” Phoenixville, 81 A.3d at 844 (emphasis added).

In addition, the Court held that if the statutory phrase "substantial gainful employment which exists," is to be meaningful within the context of the goals of the Act, the phrase "must encompass more than the mere existence of jobs compatible with a claimant's restrictions that happen to be open at the time they are discovered by the employer's expert witness ...." Id. at 845. The Court held that "the jobs identified by the employer's expert witness, which are used as the employer's proof of earning power … [should] remain open until such time as the claimant is afforded a reasonable opportunity to apply for them." Id. (emphasis added).

To fill the gap of information about the continued availability of jobs after the time they were discovered by the employer's expert witness, the Court in Phoenixville held that a claimant must be given the opportunity "to submit evidence regarding her or his experience in pursuing the jobs identified" in a labor market survey. Id. The Court, however, did not state it was the claimant's burden to do so.

More recently, in Valenta v. Workers' Compensation Appeal Board (Abington Manor Nursing Home and Rehab and Liberty Insurance Co.), ___ A.3d. ___ (Pa. Cmwlth., No. 1302 C.D. 2016, filed December 7, 2017), this Court followed our Supreme Court's lead in Phoenixville. As in Phoenixville, the employer's expert witness did not offer testimony that the identified jobs remained available beyond the date identified in the labor market survey. The claimant, however, testified that

16

she applied for some of the identified jobs, but she was not offered any. Nevertheless, the claimant's testimony, including her testimony that during her attempts to apply for identified positions she was either turned down, told the position was unavailable, or unable to reach the contact person, was not accepted by the fact-finder.

The Valenta Court expanded on the burden of proof. As part of an extended discussion on burden of proof, this Court ultimately stated that "while [the employer] maintains an ongoing burden to show that the jobs [identified in a labor market survey] remained open and available, under Phoenixville, a claimant can present evidence to the contrary." Valenta, ___ A.3d at ___ (Slip Op. at 20) (emphasis added). The Court held that if a claimant offers evidence about her experience in pursuing the jobs identified in a labor market survey, the evidence can be considered against her in the overall evaluation of the availability of the jobs.

### b. What Must Be Proven

The Supreme Court in Phoenixville, and this Court in Valenta, made clear that there must be proof that jobs identified by an employer's expert witness as proof of earning power must remain open until such time as a claimant is afforded a reasonable opportunity to apply for them. Based on Phoenixville and Valenta, we hold that a modification of benefits based on proof of earning power associated with specific positions cannot be granted without evidence in the record that the specific positions remain open until such time as a claimant is afforded a reasonable opportunity to apply for them. In the absence of such evidence, earning power

17

associated with specific positions cannot be used in the calculation of earning power under Section 306(b).

### c. Which Party Bears the Burden of Proof

Based on our recent decision in <u>Valenta</u>, we hold that an employer bears the burden of proving all facts entitling it to a modification of benefits, including the continued availability of jobs identified as proof of earning power. However, if a claimant offers evidence about her experience in pursuing the jobs identified in a labor market survey, that evidence can be considered on the issue.

### d. Proof in This Case

Here, the Board, citing <u>Rebeor</u>, which predates the Supreme Court's decision in <u>Phoenixville</u>, reasoned that Employer bore the burden to establish "only that the positions identified in the labor market survey were open and actually available to Claimant <u>at the time the survey was conducted</u>."  Bd. Op. at 12 (emphasis added).  The Board then noted that Vocational Counselor credibly testified these positions were open at the time of her survey.  <u>Id.</u>  Based on our analysis above, this proof, by itself, is inadequate on the issue of whether identified positions remained open and available for a sufficient period.

However, as the Board stated, the WCJ found Claimant immediately applied for the positions and that they were still open. Bd. Op. at 13.  In particular, the Board reasoned, "Claimant was interviewed for some of the positions, indicating such positions were clearly open." <u>Id.</u> at 13-14.  Nonetheless, the Board affirmed

18

the WCJ's determination that *all five* jobs were open because the WCJ found no evidence to support Claimant's contention that all five were not open.

We question whether merely mailing an application or making an online application to a prospective employer constitutes substantial evidence that the position in question remains open and available at the time of the application. Such evidence, by itself, is so ambiguous and so suggestive of different inferences as to amount to speculation on this point. If there is additional circumstantial evidence about a job application, however, such evidence may support a finding that the position is open and available. So, testimony of an in-person application during which information is exchanged, evidence of follow-up communications between a claimant and a prospective employer which prompt acts or inaction by a claimant, or evidence relating to an interview, may be a sufficient basis for a finding.

We agree with the Board that evidence that the Claimant here was interviewed for some identified positions constitutes substantial evidence that those positions remained open and available. In the absence of additional circumstantial evidence beyond mere applications, however, we respectfully disagree that there is substantial evidence to support a finding that all the other jobs were open and available. Moreover, we disagree with the reasoning of the WCJ and the Board that it was Claimant's burden to prove that all five jobs were not open. As we recently clarified in Valenta, the employer bears the burden of proving all facts entitling it to a modification of benefits, including the continued availability of jobs identified as proof of earning power.

19

Consequently, we note the Board's observation that Claimant only received an interview for the two security guard positions with Am-Guard. Therefore, we are constrained to hold that only these two positions remained open and available under Phoenixville. Because Employer established the existence of two open and available jobs within Claimant's vocational, physical and medical restrictions, Employer is entitled to a modification of benefits based on those two positions. As such, rather than averaging the weekly rate of the five positions identified in the labor market survey, as the WCJ did in Finding of Fact No. 11, Employer is entitled to a modification of benefits based on the average weekly rate of the two security guard positions. In Finding of Fact No. 9, the WCJ found that one of the security guard positions paid $9.00 per hour for a 40-hour work week ($360 per week) and the other paid $10.30 per hour for a 40-hour work week ($412 per week). Collectively, these positions averaged $386 per week.

Applying the formula used by the WCJ in Finding of Fact No. 11: ($992.50 AWW - $386 x. 66 2/3% = $404.30 weekly benefit rate), we recalculate the WCJ's modification of Claimant's weekly benefit rate from $396.63 to $404.30 effective April 28, 2013. See 42 Pa. C.S. §706 (an appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review).

### III. Conclusion

For the above reasons, we affirm the order of the Board with the modification of Claimant's weekly benefit rate from $396.63 to $404.30 retroactive to April 28, 2013.

20

_____
ROBERT SIMPSON, Judge


Judge Brobson concurs in the result only.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Dennis Smith,               :
               Petitioner    :
                              :
       v.                :   No. 796 C.D. 2016
                              :
Workers' Compensation Appeal   :
Board (Supervalu Holdings PA, LLC),  :
              Respondent   :

## O R D E R

**AND NOW**, this 5th day of January, 2018, for the reasons stated in the foregoing opinion, the order of the Workers' Compensation Appeal Board is **AFFIRMED** with the modification that Petitioner's weekly workers' compensation benefit rate is modified from $396.63 to $404.30, retroactive to April 28, 2013.

 

                                   _____

                                   ROBERT SIMPSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis Smith,                              :
                    Petitioner             :
                                           :   No. 796 C.D. 2016
          v.                               :
                                           :   Argued:  September 13, 2017
Workers' Compensation Appeal               :
Board (Supervalu Holdings PA, LLC),        :
                    Respondent             :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


CONCURRING OPINION
BY JUDGE McCULLOUGH                         FILED:  January 5, 2018


        I concur in the result reached by the Majority.  However, I write separately to address the Majority's discussion of this Court's holding in *Valenta v. Workers' Compensation Appeal Board (Abington Manor Nursing Home and Rehab and Liberty Insurance Co.)*, ___ A.3d ___ (Pa. Cmwlth., No. 1302 C.D. 2017, filed December 7, 2017) and the burden in these cases.

        Contrary to the Majority, we did not hold in *Valenta* that "if a claimant offers evidence about her experience in pursuing the jobs identified in a labor market survey, the evidence can be considered against her in the overall evaluation of the availability of the jobs." ___ A.3d at ___ (Slip op. at 17.)  Rather, we merely held that, under *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*,

81 A.3d 830 (Pa. 2013), a claimant must be permitted the opportunity to present evidence regarding his/her experience in applying for jobs identified by an employer as being open and available. Further, in describing the burden in *Valenta*, we held that "Employer maintains an ongoing burden to show that the jobs remained open and available," and the claimant "can present evidence to the contrary." ___ A.3d at ___ (Slip op. at 20.) I am concerned that the present Majority opinion may be construed as shifting the burden to the claimant to establish that any identified jobs are not open and available, an outcome which is not directed by either *Valenta* or *Phoenixville Hospital*.

_____
PATRICIA A. McCULLOUGH, Judge

President Judge Leavitt joins this opinion.

PAM - 2

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis Smith,                              :
                    Petitioner             :
                                           :
             v.                            :
                                           :
Workers' Compensation Appeal               :
Board (Supervalu Holdings PA, LLC),        :    No. 796 C.D. 2016
                    Respondent             :    Submitted: September 13, 2017


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORBLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


DISSENTING OPINION
BY JUDGE COSGROVE                          FILED:  January 5, 2018

        I agree with the concurring opinion of Judge McCullough noting that

the Majority misreads this Court's opinion in *Valenta v. Workers' Compensation

Appeal Board (Abington Manor Nursing Home and Rehab and Liberty Insurance

Co.),* __ A.3d __ (Pa. Cmwlth. No. 1302 C.D. 2017, filed December 7, 2017).

Contrary to the Majority's suggestion, *Valenta* does not allow a claimant's evidence

as to his/her experience in pursuing jobs identified in the labor market survey "to be

considered against [him/her] in the overall evaluation of the availability of … jobs."

(_ A.3d at _, slip op. at 17).  Such is a clear misread of *Valenta* and more importantly,

a misapplication of *Phoenixville Hospital v. Workers' Compensation Appeal Board

(Shoap)*, 81 A.3d 830 (Pa. 2013).  In that case, the Supreme Court made clear that it

was the employer which bore the burden of establishing that "the jobs identified by the employer's expert witness that the claimant is 'capable of performing' must thus be those jobs that are *actually* open and *potentially* available…." *Id.* at 843 (emphasis added). The way the Majority applies this principle turns it on its head and allows a mechanism designed to protect the claimant to become a force against him or her. This cannot be what the Supreme Court meant.

However, I cannot agree with the concurring opinion's acceptance of the result reached by the Majority. The mistaken interpretation of both *Phoenixville Hospital* and *Valenta* so taints that result that I can do nothing other than dissent.


_____
JOSEPH M. COSGROVE, Judge