IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Montero,                              :
                                           :
                    Petitioner             :
                                           :
            v.                             :  No. 864 C.D. 2019
                                           :  Submitted: November 8, 2019
Workers' Compensation Appeal               :
Board (Con-way Freight),                   :
                                           :
                    Respondent             :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: July 13, 2020


            Frank Montero (Claimant) petitions for review of an order of the
Workers' Compensation Appeal Board (Board) that affirmed an order of a Workers'
Compensation Judge (WCJ) granting Con-way Freight's (Employer) Utilization
Review Petitions (UR Petitions) and Modification Petition.  Claimant contends that
the WCJ erred in granting Employer's Modification Petition by relying upon a labor
market survey (LMS) where the vocational witness failed to present evidence
regarding the duration of time the identified jobs remained open and available after
referral, and by impermissibly shifting the burden to Claimant to show that the jobs
were not open and available.  Discerning no error, we affirm.

# I. Background

On January 5, 2012, Claimant sustained a work-related injury in the nature of a low-back injury while working as a truck driver for Employer. Claimant received workers' compensation benefits pursuant to a notice of compensation payable, which described Claimant's work injury as a "severe lumbar sprain with a left lateral L4-5 HNP with left lower extremity radiculopathy." WCJ's Op., 3/5/18, Finding of Fact (F.F.) No. 1.

In 2017, Employer filed two UR Petitions challenging the necessity of certain medical treatment. Employer also filed a Modification Petition based on an LMS that showed that vocationally and physically appropriate work was generally available to Claimant. According to the LMS, Employer identified the availability of five positions with an average pay of $427.00 per week. Claimant filed answers denying the material averments contained therein. The petitions were assigned to a WCJ who held hearings.

In support of the Modification Petition, Employer presented the deposition testimony of Amir Fayyazi, M.D. (Employer's Physician) and Nancy Robinson (Vocational Expert), who conducted the LMS and earning capacity evaluation. In opposition, Claimant testified and presented the deposition testimony of his physician, Norman Stempler, D.O. (Claimant's Physician). The relevant testimony related to the Modification Petition may be summarized as follows.

Employer's Physician performed an independent medical examination (IME) of Claimant in October 2016, at which time he took a history of Claimant's injury and treatment, reviewed his medical records, and examined him. Claimant reported continuing back and leg pain as well as numbness; he rated his pain a 4 out of 10 and was taking prescription narcotic medication. Based upon his IME, Employer's Physician testified that Claimant was capable of performing light-duty

2

work. Employer's Physician reviewed five job descriptions that were sent to him from the Vocational Expert. Employer's Physician opined that Claimant had limitations consistent with a 39-year-old with a two-level lumbar fusion, but that he was capable of performing all of the jobs referred on a full-time basis so long as Claimant was allowed to stand as needed. F.F. No. 9.

Vocational Expert testified that, prior to meeting Claimant, she contacted Employer to determine whether it had any work available to Claimant within his physical restrictions as determined by Employer's Physician. No suitable positions were available. Vocational Expert then met with Claimant in January 2017 for a vocational interview. She confirmed that Claimant had received the Notice of Ability to Return to Work, the IME report from Employer's Physician, and a physical capacities form. When she asked Claimant about his physical capacities, he reported that he could sit for a half an hour to an hour before experiencing low-back pain; he could walk 15 minutes at a time; he was not sure about his ability to lift and carry, but he could lift a gallon of milk; he had no problems reaching or with hand dexterity; and he could drive for one hour most of the time. Vocational Expert observed that Claimant was able to climb up and down a steep flight of stairs to the second floor for their meeting and put money in the parking meter. Vocational Expert testified that Claimant was pleasant, cooperative, presented well, and demonstrated good communication skills. During their meeting, Claimant confirmed that he had a commercial driver's license, is bilingual in Spanish, and uses a personal computer to perform online banking, pay bills, and use the internet.

Based on his transferrable skills, Vocational Expert conducted an LMS in Lancaster County using a variety of employment websites and employment agencies. She identified five positions that matched Employer's Physician's

capacity assessment and Claimant's vocational abilities: a security officer position with Allied Universal; a customer service call center position with Tru Green; a parking lot attendant position with Hager Parking; a telemarketing representative with LLM Motors; and a telesales representative position with Progressive Business Publications. She then sent these job referrals to Claimant. Based on the survey, Vocational Expert opined that Claimant could reasonably expect to earn between $306.25 to $580.00 per week, or an average of $427.00 per week. Vocational Expert prepared job analyses for the five positions and sent them to Employer's Physician for approval, which he approved. She also sent the job analyses to Claimant's Physician, who responded that Claimant remained totally disabled. F.F. No. 11.

Claimant acknowledged that he received the Notice of Ability to Return to Work and job referral letters from Vocational Expert. Claimant testified that he applied to some of the jobs and interviewed for some. Specifically, Claimant testified that he applied online to the Allied Universal job as a security officer. Claimant applied and went to an interview with Tru Green. At the Tru Green interview, Claimant relayed his health issues, namely, that he could not lift heavy items, could not bend much or walk for an extended period of time. Tru Green advised that they would not be able to hire him. Although Claimant testified that he had documentation on his cellphone confirming his applications to Allied Universal and Tru Green, he did not offer any documentation into evidence. Claimant also testified that he applied for a parking attendant position with Hager Parking. When Claimant called about the parking attendant position, Hager Parking advised that the position needed to be filled immediately and asked Claimant to come in the next day. Upon arrival, Hager Parking informed Claimant that it had just hired someone else for the position. Claimant testified that he did not apply for the telemarketing

4

position with LLM Motors or the telesales representative position with Progressive Business Publications. F.F. No. 12.

Claimant's Physician testified that, although Claimant continued to have difficulty with most activities and showed objective signs of spasm with pain and range of motion, he initially believed that Claimant was ready for part-time sedentary employment. However, upon reviewing the job referrals, Claimant's Physician testified that Claimant was incapable of performing any of the jobs offered because they required prolonged sitting, standing or walking. He testified that even driving is difficult for Claimant because he cannot sit for more than 15 minutes. Ultimately, he opined that Claimant was totally disabled and incapable of performing light-duty work. On cross-examination, Claimant's Physician was surprised to hear that Claimant was able to use a riding mower to maintain his lawn. F.F. No. 13.

Ultimately, the WCJ found the opinion offered by Employer's Physician that Claimant is able to perform light-duty work to be more credible than the opinion of Claimant's Physician that Claimant remained totally disabled. The WCJ explained that Employer's Physician's testimony was consistent with the fact that Claimant is capable of performing activities of daily living, including housecleaning and lawn maintenance. The WCJ found that Claimant's Physician's testimony that Claimant is totally disabled is an underestimate of Claimant's ability to function and was inconsistent with Claimant's own testimony regarding his ability to function. F.F. No. 16.

In addition, the WCJ found the testimony of Vocational Expert to be credible. Her opinion was uncontradicted by any other vocational expert. F.F. No. 17. The WCJ found Claimant's testimony credible to the extent that he testified that

5

he is able to perform his activities of daily living, which was consistent with Employer's Physician's testimony that Claimant was capable of performing light-duty work. However, the WCJ discounted Claimant's testimony that he applied for the Allied Universal and Tru Green jobs because he did not provide supporting documentation that he testified was available on his phone. The WCJ credited Claimant's testimony that he did not apply for the telemarketing position with LLM Motors or the teleservices representative position with Progressive Business Publications. F.F. No. 18.

Based on the credited evidence, the WCJ concluded that Claimant has an earning power of at least $306.25 per week. By decision and order dated March 5, 2018, the WCJ granted Employer's UR Petitions and the Modification Petition. The WCJ modified Claimant's compensation benefits by imposing a reduction to reflect an earning power of $306.25 per week. Claimant appealed to the Board, which affirmed. Claimant now petitions this Court for review.[1]

## II. Issues

Claimant contends that the WCJ erred in granting Employer's Modification Petition based on an LMS where the Vocational Expert failed to present any evidence regarding the duration of time the identified jobs remained open and available after she referred them to Claimant. In addition, Claimant asserts that the WCJ erred by impermissibly shifting the burden of proof to Claimant to show that the referred jobs were not open and available and by rejecting the

---

[1] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830, 838 (Pa. 2013).

6

uncontroverted testimony of Claimant that he had applied for three of the positions and was not hired.[2]

## III. Discussion

In workers' compensation cases, the WCJ is the ultimate fact-finder and has exclusive province over questions of credibility and evidentiary weight. *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). The WCJ may accept the testimony of any witness, including a medical witness, in whole or in part. *Id.* We are bound by the WCJ's credibility determinations. *Id.*

Moreover, it is irrelevant whether the record contains evidence supporting findings other than those made by the WCJ; the crucial inquiry is whether the evidence supports the findings actually made. *A & J Builders*, 78 A.3d at 1238. Therefore, we must examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. *Id.* If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. *Id.* at 1238-39. Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. *Id.* at 1239.

Pursuant to Section 413(a) of the Workers' Compensation Act (Act),[3] a WCJ may modify a claimant's benefits when a claimant's disability has ended or decreased. To support a modification petition, an employer must show that a

---

[2] Claimant does not challenge the WCJ's decision insofar as it granted Employer's UR Petitions.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §772.

7

claimant's disability has ended or decreased and that work within the claimant's capabilities is available. *Burrell v. Workers' Compensation Appeal Board (Philadelphia Gas Works & Compservices, Inc.)*, 849 A.2d 1282, 1287 (Pa. Cmwlth. 2004). "Disability" means "the loss of earning power caused by the work injury." *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830, 841 (Pa. 2013).

Under Section 306(b)(2) of the Act, 77 P.S. §512(2), an employer may seek a modification of a claimant's benefits by (1) offering the claimant a specific job that he is capable of performing, or (2) establishing an earning power through expert opinion evidence, which is based on job listings with agencies of the department, private job placement agencies, and advertisements in the usual employment area. *Kleinhagan v. Workers' Compensation Appeal Board (KNIF Flexpak Corp.)*, 993 A.2d 1269, 1275 (Pa. Cmwlth. 2010).

Jobs identified must be "actually open and potentially available." *Phoenixville*, 81 A.3d at 843. To qualify as "available," the positions identified as proof of a claimant's earning power must remain open until such time as the claimant is afforded a reasonable opportunity to apply for them. *Id.* at 845; *Valenta v. Workers' Compensation Appeal Board (Abington Manor Nursing Home & Rehab and Liberty Insurance Co.)*, 176 A.3d 374, 385 (Pa. Cmwlth. 2017). If a job is filled before the employee has notice and a reasonable opportunity to apply, the job does not exist. *Phoenixville*, 81 A.3d 830. Evidence of availability at the time of the LMS alone is insufficient to support a modification of benefits. *Id.* In other words, an employer must prove the "existence of meaningful employment opportunities, and not the simple identification of jobs found in want ads or employment listings." *Phoenixville*, 81 A.3d at 842-43.

8

The "employer bears the burden of proving all facts entitling it to a modification of benefits, including the continued availability of the jobs identified as proof of earning power." *Smith v. Workers' Compensation Appeal Board (Supervalu Holdings PA, LLC)*, 177 A.3d 394, 404 (Pa. Cmwlth.), *appeal denied*, 189 A.3d 983 (Pa. 2018). However, when a claimant offers evidence regarding his pursuit of jobs, that evidence may be considered when assessing their availability. *Id.* Evidence that a claimant was unsuccessful in his applications does not mandate a finding that the positions were not open and available. *Valenta*, 176 A.3d at 382. Rather, while evidence regarding a claimant's efforts to procure one of the identified jobs is relevant to rebutting the positions as proof of claimant's earning power, such evidence is "not dispositive of the earning power inquiry." *Phoenixville*, 81 A.3d at 846; *accord Valenta*, 176 A.3d at 383.

Recently, in *Smith*, we considered the issue of whether the employer met its burden of proving that the jobs remained "open and available," and whether the WCJ improperly shifted the burden to the claimant to prove that the positions were not available. 177 A.3d at 401-402. There, the employer's expert witness identified five jobs compatible with the claimant's vocational and medical restrictions, which were available at the time she conducted the survey. *Id.* at 402. However, the vocational expert had no idea whether any of the jobs referred were open and available beyond the date she contacted the prospective employers. *Id.* The employer offered no evidence that the positions were open and available when the claimant made his applications. *Id.* Relying on *Phoenixville* and *Valenta*, we determined that it was not enough for the employer to prove that the positions identified in the LMS were open and available "at the time the survey was conducted." *Id.* at 404. Rather, there must be proof that the jobs must "remain open

until such time as the claimant is afforded a reasonable opportunity to apply for them." *Smith*, 177 A.3d at 403 (quoting *Phoenixville*, 81 A.3d at 845).

Although it is the employer's burden, evidence offered by a claimant may be considered on the issue. *Smith*, 177 A.3d at 404. In *Smith*, the claimant testified that he immediately applied for the positions upon receiving the referrals and was interviewed for some of the positions. 177 A.3d at 404. We opined that mere evidence that a claimant applied for a position is not substantial evidence that the position in question remained open and available at the time of application. *Id.* "Such evidence, by itself, is so ambiguous and so suggestive of different inferences as to amount to speculation on this point." *Id.* However, "testimony of an in-person application during which information is exchanged, evidence of follow-up communications between a claimant and a prospective employer which prompt acts or inaction by a claimant, or evidence relating to an interview, may be a sufficient basis for a finding" that the position is open and available. *Id.* We concluded that "evidence that the [c]laimant . . . was interviewed for some identified positions constitute[d] substantial evidence that those positions remained open and available." *Id.*[4]

Here, there is no dispute that the jobs were both medically and vocationally suitable for Claimant. As in *Smith*, our focus is on whether Employer met its burden of proving that the jobs remained open and available for a sufficient period and whether the WCJ improperly shifted the burden. In support of its

---

[4] In *Smith*, the WCJ modified the claimant's compensation benefits based on potential earning power derived from averaging the pay of the five positions identified in the LMS. However, the evidence only supported the finding that two of the five jobs were open and available. Consequently, we determined that the employer was entitled to a modification of benefits based only on those two positions, not an average of the five positions identified in the LMS. *Smith*, 177 A.3d at 404-05.

Modification Petition, Employer presented the testimony of Vocational Expert. Vocational Expert testified that she met with the employers to confirm the availability of the positions and immediately sent Claimant referral letters regarding the positions. Certified Record (C.R.), Item No. 30, Deposition of Nancy Robinson, 10/24/17, at 20-21, 23, 25, 27-31. However, Vocational Expert did not testify regarding the continued availability of the jobs beyond that date.

Claimant testified that he received the referral letters and applied to some of the jobs. Notably, Claimant testified that he "went to an interview with some of those jobs . . . ." C.R., Item No. 18, WCJ's Hearing, 10/26/17, Notes of Testimony (N.T.) at 14. He testified that he interviewed with Tru Green. N.T. at 16, 18. For the Hager Parking attendant position, Claimant testified that when he received the letter from the Vocational Expert, he telephoned and inquired about the job. N.T. at 19-20. According to Claimant, Hager Parking told him that the position was open and needed to be filled immediately; Hager Parking asked Claimant to come in for an interview the next day. N.T. at C.R. at 19-20. As in *Smith*, Claimant's own testimony supported the WCJ's finding that these positions were open and available when he applied. Consideration of Claimant's testimony in this regard does not constitute an improper attempt to shift the burden. *See Smith*.

## III. Conclusion

Based on the foregoing, we conclude that Employer met its burden of proving that work within Claimant's physical and vocational capabilities was open

11

and available.  Therefore, the WCJ did not err in granting Employer's Modification Petition and imposing a reduction to reflect an earning power of $306.25 per week.[5]

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

---

[5] Although the WCJ found that Claimant could reasonably expect to earn between $306.25 to $580.00 per week or an average of $427.00 per week in an alternative full-time position, F.F. No. 11(r), the WCJ reduced Claimant's compensation benefits by the lowest amount in the range, not the average.  Because the lowest paying job was the parking attendant position with Hager Parking (*see* C.R., Item No. 31, Earning Power Evaluation at 6), it is not necessary to adjust the reduction of benefits.  *Cf. Smith*.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Montero, :
:
Petitioner :
:
v. : No. 864 C.D. 2019
:
Workers' Compensation Appeal :
Board (Con-way Freight), :
:
Respondent :

O R D E R

AND NOW, this 13th day of July, 2020, the order of the Workers'
Compensation Appeal Board, dated June 18, 2019, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge